■ SOCIETE GENERALE ALSACIENNE DE BANQUE, ZURICH, Appellant, v FLEMINGDON DEVELOPMENT CORPORATION et al., Respondents.—In an action, *inter alia,* to recover damages for conversion, unjust enrichment, and fraud, the plaintiff appeals from an order of the Supreme Court, Rockland County (Jiudice, J.), dated December 21, 1984, which denied its motion for an order of attachment pursuant to CPLR 6201 (1) and (3).

Order modified, by deleting the provisions thereof denying those branches of the plaintiff's motion which were for an order of attachment pursuant to CPLR 6201 (3) against the defendants Flemingdon Development Corporation (hereinafter Flemingdon) and Lieb Waldman, and substituting therefor provisions granting those branches of the motion. As so modified, order affirmed, with costs to the plaintiff payable by Flemingdon and Lieb Waldman.

The instant action was instituted by Societe Generale Alsacienne De Banque, Zurich (hereinafter Societe) to recover the sum of $350,000 extended in the form of credit by it in reliance upon a check payable to its order, which was issued in March 1984 by Flemingdon, a New York corporation. The check was signed on behalf of Flemingdon by Lieb Waldman, its president, director and sole shareholder.

Societe is a Swiss banking corporation located in Zurich, Switzerland. Waldman had maintained banking relations with Societe for personal and business purposes for several years prior to the March 1984 incident. One of the accounts maintained by Waldman at Societe was identified as account No. 2985, which was in the name of Flemingdon. Several times during the two years prior to the March 1984 incident, account No. 2985 had been overdrawn, and on such occasions, Societe advised Flemingdon that payment of the account deficit was required before further credit would be extended. On those occasions, Waldman, on behalf of Flemingdon, appeared at Societe's Zurich offices and deposited funds to cover the deficits in that account.

In early March 1984, account No. 2985 was again overdrawn and Flemingdon was advised that Societe would not honor any further payment orders drawn on that account until the debit position had been covered. On March 8, 1984, Waldman appeared at Societe's Zurich offices with a check in the amount of $350,000 drawn on Flemingdon's account at Chemical Bank, and signed by Waldman. Waldman subsequently admitted that at the time he presented the check he knew that there were insufficient funds in Flemingdon's account at Chemical Bank to cover it. However, Waldman claimed that he had every reasonable expectation that sufficient funds would be on hand at the time the check was presented to Chemical Bank. According to Societe, Waldman requested that he be permitted to open a new, separate account at Societe in the name of Flemingdon and to deposit the check in that account, which was identified as account No. 3285. Societe apparently consented to this arrangement on the condition that Waldman execute an agreement pledging all the funds in the new account to cover any debits and unfunded payment orders on account No. 2985. Waldman acknowledges that he signed the pledge agreement provided by Societe, but claims that the document was a standard bank form used in opening up all new accounts. He claims that he had no intention of pledging the funds in Flemingdon's new account to cover deficits in account No. 2985.

Meanwhile, on March 9, 1984, Societe forwarded the $350,-000 check to Morgan Guaranty Trust Company of New York (hereinafter MGT), its correspondent bank in New York, for collection. On March 13, 1984, MGT received the check and processed it for collection through the New York Clearing House, crediting Societe's account. On March 14, 1984, Chemical Bank returned the check to MGT, advising MGT that the account upon which the check was drawn contained insufficient funds and that the account, in fact, had been closed at Chemical Bank's request on or about March 14, 1984, because of Flemingdon's continued pattern and practice of maintaining the account in a debit position. As a result of Chemical Bank's refusal to honor the $350,000 check, MGT reversed its credit to Societe's account. According to Societe, by the time the credit to its account was reversed by MGT, it had already honored payment orders on account No. 2985 in the amount of $350,000.

On March 22 and 23, 1984, Societe contacted Waldman by telephone and advised him that the $350,000 check had been returned due to insufficient funds. On March 22, 1984, Wald-

man told Societe that the check bore an incorrect account number at Chemical Bank and that Societe should re-present the check to Chemical Bank for payment. The next day, March 23, 1984, Waldman told Societe that he would personally contact Chemical Bank to insure that the check would be properly paid out of the correct account. When Societe re-presented the check for collection, however, it was advised by Chemical Bank that all accounts held by Flemingdon at Chemical Bank had been closed nearly two weeks earlier, on March 14, 1984. Subsequent attempts by Societe to contact Waldman by telephone and mail were futile.

Thereafter, Societe commenced an action against Flemingdon and Waldman in the United States District Court, Southern District of New York, seeking to recover the sum of $350,000. Jurisdiction in that Federal action was based upon the alleged diversity of citizenship of the parties. In June 1984, Societe obtained from the Federal court an ex parte order of attachment against the property of Flemingdon and Waldman. At the time the Federal ex parte order of attachment was issued, Societe had discovered a bank account in the Bank of New York (hereinafter BNY) held in the name of Flemingdon. When the Federal order of attachment was served upon BNY, Flemingdon's account at that bank had just been credited with a deposit of approximately $300,000 from the National State Bank of Elizabeth, New Jersey (hereinafter NSB). Upon being advised of the order of attachment on said account, Waldman allegedly attempted to have the funds of $300,000 returned to NSB in New Jersey. These efforts were unsuccessful.

Following the issuance of the Federal ex parte order of attachment, Flemingdon and Waldman moved to dismiss the Federal action for lack of diversity jurisdiction based on Waldman's claim that he was a resident alien, rather than a United States citizen as alleged by Societe. Flemingdon, a New York corporation, also maintained that Waldman was an indispensible party and that the Federal action could not proceed in his absence.

While the motion to dismiss the Federal action was pending, Societe instituted the instant action against Flemingdon, Waldman and his wife, Eva Waldman, seeking to recover damages in the amount of $350,000, *inter alia,* for conversion, unjust enrichment and fraud. Societe also sought a concurrent order of attachment against the defendants' property pursuant to CPLR 6201 (1) and (3). Societe stated that a concurrent order of attachment was necessary since it intended to request

a voluntary dismissal of its pending Federal action and to pursue its claim in the courts of this State. The Federal action was eventually discontinued.

CPLR 6201 provides, in pertinent part, as follows:

"An order of attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled, in whole or in part, or in the alternative, to a money judgment against one or more defendants, when:

"1. the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state; or * * *

"3. the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts".

Special Term, in the case at bar, denied Societe's motion for an order of attachment under the aforesaid statutory provisions. The court stated, *inter alia:*

"Based upon all of the evidence submitted, it is the opinion of this Court that the plaintiff has failed to sustain its burden to show that the individual defendants are non-domiciliaries residing without this state or that the defendant corporation is not qualified to do business in this state.

"Finally, the plaintiff has failed to sustain its burden to indicate any disposition or secretion of assets by any of the defendants or any fraud with the intent to defraud creditors or frustrate the enforcement of any potential judgment".

We modify the order appealed from by granting those branches of the Societe's motion which were for an order of attachment pursuant to CPLR 6201 (3) against Flemingdon and Lieb Waldman.

In order to prevail under CPLR 6201 (3), the plaintiff must demonstrate: (1) that the defendant has, or is about to conceal his or her property in one of the enumerated ways, and (2) that defendant has acted or will act with the intent to defraud his or her creditors *or to* frustrate the enforcement of a judgment for the plaintiff *(see,* 7A Weinstein-Korn-Miller, NY Civ Prac ¶ 6201.12; *Brezenoff v Vasquez,* 107 Misc 2d 197, 198). "Fraud is not lightly inferred, and the moving papers must contain evidentiary facts—as opposed to conclusions—proving the fraud" (McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C6201:4, p 13; *see*

*also, Anderson v Malley,* 191 App Div 573). Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient. "It must appear that such fraudulent intent really existed in the defendant's mind *(Eaton Factors Co. v Double Eagle Corp.,* 17 AD2d 135)" *(Computer Strategies v Commodore Business Machs.,* 105 AD2d 167, 173, *rearg and lv denied* 110 AD2d 743; *Laco X-Ray Sys. v Fingerhut,* 88 AD2d 425, *appeal dismissed* 58 NY2d 826). In addition to proving fraudulent intent, the plaintiff must also show probable success on the merits of the underlying action in order to obtain an order of attachment *(see,* CPLR 6212 [a]; *Computer Strategies v Commodore Business Machs., supra,* at p 172).

Based upon a review of the record herein, we conclude that Societe has produced sufficient evidentiary facts to warrant the issuance of an order of attachment under CPLR 6201 (3) against Flemingdon and Lieb Waldman. In the first instance, Waldman drew the check in issue on Flemingdon's behalf, admittedly with the knowledge that there were insufficient funds in Flemingdon's Chemical Bank account to satisfy payment. This conduct in and of itself constitutes actionable fraud *(see, Sam & Sons Produce Co. v Campese,* 14 AD2d 487; *Marine Midland Bank v Russo Produce Co.,* 65 AD2d 950, 951, *mod on other grounds* 50 NY2d 31). In addition, Waldman's conduct after passing the bad check demonstrated an intent to secrete Flemingdon's assets in order to frustrate Societe's collection on the check. Such conduct included Waldman's statement to Societe that the check bore an incorrect account number and should be re-presented to Chemical Bank for payment even though Waldman knew or should have known that all of Flemingdon's accounts at that bank had been closed. In addition, Waldman's refusal to respond to Societe's subsequent telephone and mail inquiries concerning its inability to collect on the check, as well as his alleged attempts to remove the funds in Flemingdon's account at BNY following the service of the Federal ex parte order of attachment, evidences an intent to defraud Societe. In view of these facts, an order of attachment should have been issued under CPLR 6201 (3) against him and Flemingdon.

In view of the above, we do not pass on the merits of Special Term's denial of an order of attachment under CPLR 6201 (1).

In conclusion, we note that the branch of Societe's motion seeking an order of attachment against assets held by Eva Waldman was properly denied. Although Societe alleges that Eva Waldman, a director of Flemingdon, a joint signatory of the corporation's bank accounts and owner of the premises

claimed as Flemingdon's place of business, was, in some way, involved in the scheme to defraud Societe, there is a question as to the bank's probability of success on the merits against that defendant. Accordingly, an order of attachment against Eva Waldman's assets is not warranted (see, CPLR 6212 [a]). Mollen, P. J., Lazer, Weinstein and Rubin, JJ., concur.