The CITY OF NEW YORK, Plaintiff,

v.

CITISOURCE, INC., Stanley M. Friedman, Marvin B. Kaplan, Albert J. Kaplan, Marvin H. Kushnick and E. Martin Solomon, Defendants.

No. 86 Civ. 9900 (WCC).

United States District Court,
S.D. New York.

March 7, 1988.

Peter L. Zimroth, Corp. Counsel, New York City, for plaintiff; Helene Fromm, Steven R. Levi, Asst. Corp. Counsel, of counsel.

Leon Friedman, Stanley Friedman and Marvin Kaplan, New York City, for defendants; Leon Friedman, Gerald B. Lefcourt, Joshua L. Dratel, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff, the City of New York, moves this Court pursuant to Rule 64, Fed.R. Civ.P., and Article 62 of the New York Civil Practice Law and Rules (McKinney 1980 & Supp.1988) ("CPLR"), for an attachment against the following assets of defendants Stanley M. Friedman and Marvin B. Kaplan: (1) a bank account at European American Bank in the name of Stanley M. Friedman, P.C., in the amount of $276,-963.64; (2) two bank accounts at Chemical Bank in the name of Marvin B. Kaplan in the total amount of $5,130.00; and (3) an account at Chemical Bank in the amount of $400,000.00 in the name of Desu Consulting and Leasing Co. Retirement Trust, account # 006–044–425. The City also seeks injunctions against Friedman and Kaplan, or any other persons, firms or corporations acting in their behalf or under their control, barring them from disposing of, transferring, or secreting the assets, and barring Chemical Bank and European American Bank from releasing the assets.

Plaintiff initially brought this motion on December 22, 1987, by order to show cause. The Court provisionally granted the attachment and a temporary restraining order until such time as it could give the motion full consideration.

On January 14, 1988, the Court issued an opinion and order vacating the attachment and denying the requested relief, 676 F.Supp. 546. The Court stayed execution of the order vacating the attachment to allow plaintiff to pursue an expedited appeal.

The City now moves for reargument pursuant to Rule 3(j) of the Civil Rules of this Court. In its original motion, the City had relied exclusively on CPLR § 6201(4). Now, in addition to arguing that the Court erred in its interpretation of § 6201(4), the City asserts that it is entitled to an attachment pursuant to CPLR § 6201(3). For the reasons set forth below, the motion is granted in part and denied in part, and upon reargument the motion for a continued order of attachment is granted.

### I. Facts

In this action the City seeks treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) & (d) (1982), for injury sustained as a result of defendants' bribery of Geoffrey Lindenauer, the former Deputy Director of the City's Parking Violations Bureau ("PVB"), and Donald Manes, the former Queens Borough President.[1] The bribes were intended to influence favorably the actions of Manes and Lindenauer as public servants in connection with the award of a $22.7 million municipal contract

---

1. The City also has stated claims for common law fraud and fraudulent concealment, inducement to breach of fiduciary duty, a constructive trust, restitution, breach of contract warranties, breach of contract, loss of revenues and liquidated damages.

to defendant CitiSource, Inc. On November 25, 1986, a federal jury found Friedman and Kaplan guilty of criminal charges of racketeering, RICO conspiracy and mail fraud in connection with the award of the CitiSource contract. The jury found that defendants Friedman and Kaplan, unlawfully, willfully and knowingly conducted and participated in the conduct of the affairs of the PVB through a pattern of racketeering activity, as that term is defined by sections 1961(1) and 1961(5) of RICO, by bribing Manes and Lindenauer with shares of CitiSource stock which were held for them by defendant Friedman.

On March 11, 1987, Friedman and Kaplan were sentenced and judgment of conviction was entered. Friedman was sentenced to a twelve-year prison term, to be followed by five years probation, and ordered to forfeit his CitiSource shares. The Court also barred Friedman from participating in politics in any way, other than to exercise his right to vote. Kaplan was sentenced to a four-year prison term and a $250,000 fine, and ordered to forfeit his CitiSource shares. Friedman and Kaplan have appealed their convictions. The appeal, which was argued in September 1987, is still pending.

On about March 27, 1986, the Manhattan District Attorney filed an indictment against defendants Friedman and Kaplan and other CitiSource principals based on the fraudulent procurement of the CitiSource contract and the subsequent public offering of CitiSource stock. The District Attorney also obtained orders of attachment in a related state civil forfeiture action against the assets which are at issue in this case. The attachment orders were based on the same circumstances which gave rise to the state indictment. On December 17, 1987, the New York Court of Appeals barred the District Attorney from proceeding with the criminal prosecution of Friedman and Kaplan under the state indictment, on the ground that the state prosecution violated the double jeopardy clause of the State and Federal Constitutions. *Matter of Marvin B. Kaplan,* 71 N.Y.2d 222, 525 N.Y.S.2d 1, 519 N.E.2d 802 (1987). The state court has since vacated the attachment in the civil forfeiture action.

In his affidavit in support of the order to show cause, and in his supplemental affidavit in support of the motion to continue the attachment, John F. Grubin, the Chief of the Commercial Litigation Division of the Corporation Counsel, states that Friedman called the European American Bank prior to any court order vacating the state court attachment, and inquired about withdrawing money from the Stanley M. Friedman, P.C. account. Grubin Aff. at 5, n. 4; Grubin Supp.Aff. at ¶ 17. Grubin also alleges that Kaplan attempted to transfer to himself, in bearer form, a $400,000 treasury bill which was being held in the Desu Retirement Trust. Grubin Supp.Aff. at ¶ 19. Friedman has submitted the affidavit of Jon D. Karnofsky, counsel to European American Bank, in which Karnofsky asserts that Friedman was merely inquiring as to the procedure for gaining access to his account if the attachment was lifted. Karnofsky Aff. at ¶ 9. Kaplan has submitted an affidavit made by Barbara Petrillo, a manager in REBC Associates, which performs administrative functions for the trustees of the Desu Retirement Trust. The Petrillo affidavit states that the trust agreement provides Kaplan with the authority to register any of the trust's securities in his own name, as trustee. Petrillo Aff. at ¶ 7.

## II. *Discussion*

■ In denying plaintiff's original motion, the Court relied on the purpose and legislative history of § 6201(4).[2] As dis-

---

**2.** The Court also based its original ruling on the penal law exception to the doctrine of full faith and credit. § 6201(4) provides that an order of attachment may be granted in an action for a money judgment when "the cause of action is based on a judgment, decree or order of a court of the United States or of any other court which is entitled to full faith and credit in this state."

The Court interpreted this language as requiring that an attachment could not be based on a judgment of a federal court unless that judgment was entitled to full faith and credit. Criminal judgments, however, are not entitled to full faith and credit. *See, e.g., Nelson v. George,* 399 U.S. 224, 229, 90 S.Ct. 1963, 1966, 26 L.Ed.2d 578 (1970) *Farmland Dairies v. Barber,* 65 N.Y.

cussed in that opinion and in the Second Circuit's opinion in *Keeton v. Hustler Magazine, Inc.*, 815 F.2d 857, 860–61 (2d Cir. 1987), the legislative history demonstrates that § 6201(4) was adopted to facilitate the enforcement of judgments. Here, however, the City is not suing to enforce a judgment, but rather seeks to employ the doctrine of collateral estoppel to prevent the defendants in this action from litigating issues of fact that they already litigated in the criminal RICO case. The City has failed to refute the Court's holding that an attachment of defendants' assets under § 6201(4) is beyond the purpose for which the statute was adopted. Therefore, insofar as the City seeks an attachment based on § 6201(4), the motion for reargument is denied.

The City now also asserts that it is entitled to an attachment under CPLR § 6201(3). § 6201(3) provides for an attachment when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." The City argues that Friedman's call to the European American Bank to inquire about the release of his funds, and Kaplan's inquiries concerning the Desu Retirement Trust account, demonstrate an attempt to dispose of property with intent to frustrate the enforcement of any future judgment rendered in favor of the City.

As stated in the Court's prior opinion, attachment is a harsh remedy for which the supporting evidence must be strictly construed against the plaintiff. *See Interpetrol Bermuda, Ltd. v. Trinidad & Tobago Ltd.*, 135 Misc.2d 160, 168, 513 N.Y.S.2d 598, 603 (Sup.Ct.1987). A plaintiff seeking an attachment under § 6201(3) must show that defendant has or is about to dispose of property with the intent to defraud creditors or frustrate the enforcement of a judgment. *Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769, 772, 500 N.Y.S.2d 278, 281 (2d Dep't 1986). It is well established that when a plaintiff seeks an attachment on the ground that defendant has acted with intent to defraud, fraud will not be lightly inferred. *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331 (2d Cir.1983); *Wohl v. Westheimer*, 610 F.Supp. 52, 54 (S.D.N.Y.1985); *Societe Generale*, 118 A.D.2d 769, 772–73, 500 N.Y.S.2d 278, 281; McLaughlin, Practice Commentaries to CPLR, § C6201:4 (McKinney's 1980). Evidence which establishes defendant's intent to dispose of property, standing alone, does not justify an attachment. *Richardson Greenshields Securities, Inc. v. Mui–Hin Lau*, 651 F.Supp. 929, 933 (S.D.N.Y.1986); *Merrill Lynch Futures, Inc. v. Kelly*, 585 F.Supp. 1245, 1258 (S.D.N.Y.1984); *Computer Strategies, Inc. v. Commodore Business Machines, Inc.*, 105 A.D.2d 167, 173, 483 N.Y.S.2d 716, 721 (2d Dep't 1984); *Laco X–Ray Systems, Inc. v. Fingerhut*, 88 A.D.2d 425, 429, 453 N.Y.S.2d 757, 760 (2d Dep't 1982).

The same principles should apply when plaintiff seeks an attachment on the ground that defendant is disposing of property with the intent to frustrate the enforcement of a judgment. Plaintiff cannot show such an intent merely by adducing evidence that defendants have sought to withdraw money from their bank accounts.

2d 51, 56, 478 N.E.2d 1314, 1318, 489 N.Y.S.2d 713, 716 (1985). Therefore, the Court concluded that City could not base a right to attachment on defendants' criminal RICO convictions.

The City's motion for reargument has given the Court an opportunity to reconsider this aspect of its ruling. The full faith and credit language in § 6201(4) appears susceptible to two interpretations. Under the interpretation which the Court adopted in its previous opinion, the full faith and credit language acts as a limit on the use of both federal judgments and non-federal judgments as a predicate for attachment.

On the other hand, the full faith and credit language could also be interpreted as a limit only on the use of non-federal judgments as a predicate for attachment. Under the latter interpretation, federal criminal convictions, which are not entitled to full faith and credit, could provide a basis for an attachment. The Court, however, need not choose between these two interpretations, because, as discussed in the body of this opinion, the purpose and legislative history of § 6201(4) provide an independent basis for denying the attachment.

Plaintiff must show that defendants somehow have attempted to conceal their property or to place it beyond the reach of the Court's judgment.

■ The City has proffered sufficient evidence to justify an attachment under § 6201(3). According to the City's affidavits, both defendants have taken actions which indicate their desire to dispose of the attached funds. While an attempt to dispose of assets, standing alone, will not justify an attachment, the timing of defendants' actions raises an inference that defendants intended to frustrate enforcement of a judgment.

Immediately upon learning of the dismissal of the state forfeiture action, Friedman contacted his bank to inquire about the release of the attached funds. Friedman acted prior to the entry of an order vacating the attachment, and without consulting his attorneys. The haste and stealth with which he proceeded weigh against any finding of good faith. In addition, the Court stated at a pre-motion conference that it would allow Friedman to withdraw money for necessities while the motion to continue the attachment was under consideration. Friedman, however, has not made any such application. Accordingly, it seems that Friedman intended to remove his funds from the reach of the Court.

The same analysis applies to Kaplan's actions with regard to the $400,000 treasury bill held in the Desu Retirement Trust. The City bases its allegations on an affidavit submitted to New York Supreme Court Justice Stecher, who presided over the state court forfeiture action. Justice Stecher, relying on the affidavit, stated that Kaplan attempted to transfer the treasury bill to himself in bearer form, or to have the cash value of the bill transferred to his broker in anticipation of the maturity of the treasury bill. Supplemental Aff. of John F. Grubin in Support of Motion for Attachment, Exh. D, p. 2. At the time of Kaplan's attempted transfer, he was under indictment in connection with the CitiSource fraud. The District Attorney had just obtained an *ex parte* order of attachment against Kaplan's property for the

sum of $1 million together with interest, costs and expenses for a total of $1,140,-300. In addition, Kaplan had been named as a defendant in a CitiSource shareholder's action. *See Witlen v. CitiSource, Inc., et al.*, 86 Civ. 1711 (GLG) (S.D.N.Y.). Thus, Kaplan's inquiries regarding the treasury bill came at the very moment that he discovered the full extent of his potential civil liability. Moreover, as with Friedman, the Court informed Kaplan's counsel at a pre-motion conference that it would lift the attachment for the limited purpose of allowing reinvestment of the trust funds should Kaplan show that this was necessary. Kaplan's failure to make an application in this regard belies counsel's contention that Kaplan merely intended to reinvest the treasury bill. Therefore, the evidence submitted establishes that Kaplan intended to frustrate enforcement of the anticipated judgment.

Further, as the City asserts, neither Kaplan nor Friedman have made affidavits regarding their motives. The City, having raised the inference that defendants intended to frustrate enforcement of a future judgment, has shifted to defendants the burden of producing evidence of intent. Affidavits by defendants as to their intent might refute this inference, but defendants have submitted no such affidavits. *See Mishkin v. Kenney & Branisel, Inc.*, 609 F.Supp. 1254, 1256 & n. 5 (S.D.N.Y.1985) (Weinfeld, J.) (emphasizing the significance of the absence of a single affidavit by any defendant). Therefore, the City has satisfied the requirements of § 6201(3).

Although the City has shown that it is entitled to an attachment under § 6201(3), an attachment cannot issue unless the City also shows that its claim has a probability of success on the merits, and that the amount demanded from defendants is greater than all known counterclaims. *See* CPLR § 6212(a). The City asserts that defendants' criminal RICO convictions demonstrate the requisite probability of success. The City reasons that under the doctrine of collateral estoppel, the criminal convictions conclusively establish defendants' civil liability.

Defendants respond that the City cannot recover under RICO unless it has been injured in its business or property by reason of the RICO violations. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); 18 U.S.C. 1964(c). The requirement of injury to business or property is unique to civil RICO, and was not decided in the criminal trial. *See Anderson v. Janovich,* 543 F.Supp. 1124, 1132 (W.D.Wash.1982); *Cook County v. Lynch,* 560 F.Supp. 136, 140 (N.D.Ill.1982). Consequently, defendants assert that in this civil action, plaintiff's injury is still an open question.

Defendants further assert that the City's claims for damages are spurious and speculative. According to defendants, the only funds the City paid under the fraudulently induced contracts were for services that were fully performed at a competitive price. Thus, defendants conclude that the City cannot establish injury, and therefore will not succeed on the merits of its claims.

■ Defendants' argument, however, is inconsistent with the governing law. When a contract is procured through bribes to an agent of one of the contracting parties, the defrauded principal is entitled to recover as damages the value of the bribes and the amounts paid under the fraudulently procured contract. *Continental Management, Inc. v. United States,* 527 F.2d 613, 616–17, 208 Ct.Cl. 501, (1975) (entitled to value of bribes); *S.T. Grand, Inc. v. City of New York,* 32 N.Y.2d 300, 305, 344 N.Y.S.2d 938, 942, 298 N.E.2d 105, 108 (1973) (entitled to money paid under contract). This principle of law, taken together with the collateral estoppel effect of the criminal convictions, establishes that the City is likely to succeed on the merits.

Although defendants concede that under the general rule the City could recover the amounts paid under a fraudulently procured contract, defendants assert that this case falls within the exception recognized in *Gerzof v. Sweeney,* 22 N.Y.2d 297, 292 N.Y.S.2d 640, 239 N.E.2d 521 (1968). In *Gerzof* there was an initial round of competitive bidding. The municipal trustees, however, rejected the low bidder and revised the contract specifications to favor one of the higher bidders. Rather than awarding the full amount of money paid on the contract as damages, the court awarded the difference between the lowest legitimate bid and the money paid on the fraudulent contract. The court in *S.T. Grand,* discussing *Gerzof,* reasoned that the competitive bidding process provided a sufficiently reliable basis on which to calculate damages. 32 N.Y.2d at 306–07, 344 N.Y.S. 2d at 943, 298 N.E.2d at 109.

While the contention that this case falls within *Gerzof* cannot be dismissed as frivolous, the application of the *Gerzof* exception is not an issue which should be decided at this preliminary stage. Because attachment is a provisional remedy, a court should not decide the merits of a cause of action on a motion for attachment unless the complaint and the affidavits clearly indicate that the plaintiff must fail. *See American Jerex Co. v. Universal Aluminum Extrusions, Inc.,* 340 F.Supp. 524, 529 (E.D.N.Y.1972); *Marklin v. Drew Properties Corp.,* 280 F.Supp. 176 (S.D.N.Y.1967). The papers submitted in support of this motion do not meet this standard. Neither party to the action has submitted any competent evidence as to the bidding process. Consequently, there is no reason to invoke the *Gerzof,* exception. Under the general rule, the City would be entitled to recover the money paid under the contract. Therefore, the City has shown a probability of success on the merits.

■ The attachment statute also requires that the City's claim exceed any known counterclaims. Since this case was placed on the suspense calendar prior to defendants' answer, defendants have not had an opportunity to assert any counterclaims. In their moving papers, however, defendants have indicated their intention to assert counterclaims on behalf of Citi-Source. The City has contested these counterclaims, arguing that under the governing case law the vendor may not recover on the contract or in *quantum meruit* for work performed pursuant to an illegal municipal contract. *S.T. Grand,* 32 N.Y.2d at 305, 344 N.Y.S.2d at 942, 298 N.E.2d at

108. Although the statute requires that the plaintiff's claim exceed any known counterclaims, the cases have interpreted this to mean any counterclaims that the plaintiff concedes as just. *Shearson Hayden Stone, Inc. v. Scrivener*, 480 F.Supp. 256, 259 (S.D.N.Y.1979); *American Jerex Co.*, 340 F.Supp. at 529. This is consistent with the principle that the Court should not reach the merits of a claim on a motion for attachment. Consequently, the defendants' potential counterclaims are not a bar to attachment.

Defendants have argued that even if an attachment is proper, the Desu Retirement Trust is a qualified ERISA trust, and therefore inalienable. *See Ellis National Bank of Jacksonville v. Irving Trust Co.*, 786 F.2d 466 (2d Cir.1986); 29 U.S.C. § 1056(d)(1). The Internal Revenue Service ("IRS") has issued favorable determinations as to the trust, and the Department of Labor has not raised any objections to the trust or its operation. Although the opinions of the IRS and the Department of Labor are not controlling, they are entitled to great weight. *See United Metal Products v. National Bank of Detroit*, 811 F.2d 297, 299 (6th Cir.1987); *Vink v. SHV North American Holding Corp.*, 549 F.Supp. 268, 272 (S.D.N.Y.1982). The City has questioned the defendants' claim that the trust is a qualified ERISA trust, but contends that it cannot challenge the validity of the trust without further discovery. The Court concludes that further discovery is appropriate. Accordingly, the attachment of the trust account will continue for one additional month. To avoid prejudice to the beneficiaries of the trust, however, the trustees may move to have the attachment lifted for the limited purpose of facilitating reinvestment of the trust assets.

### III. *Conclusion*

For the foregoing reasons, the plaintiff's motion for reargument is granted in part and denied in part, and, upon reargument, the motion for a continued order of attachment is granted as to the Friedman bank account at European American Bank and the Kaplan bank accounts at Chemical Bank. The attachment on the Desu Consulting and Leasing Co. Retirement Trust, account # 006–044–425, will continue for one month from the date of this order. Defendants may apply to lift the attachment upon the submission of affidavits by defendants explaining their actions with respect to the attached funds. In addition, the trustees of the Desu Retirement Trust may move to have the attachment of the trust lifted to enable reinvestment of the trust assets.

SO ORDERED.