In re OUR DISTRIBUTION CO., INC.
d/b/a Dee Jay Tobacco, Debtor.

Richard E. O'CONNELL, as Trustee in Bankruptcy for Our Distribution Co., Inc., Plaintiff,

v.

Robert PINCUS and Mona Pincus, Defendants.

Bankruptcy No. 88 B 11563 (TLB).
Adv. No. 89–5797–A.

United States Bankruptcy Court,
S.D. New York.

Feb. 2, 1990.

Yost & O'Connell by Richard E. O'Connell, Flushing, N.Y., for trustee.

Hockert & Flamm by Leonard N. Flamm New York City, for defendant, Robert Pincus.

## DECISION ON MOTION TO CONFIRM PREJUDGMENT ATTACHMENT

TINA L. BROZMAN, Bankruptcy Judge:

At issue is the propriety of confirming pursuant to Fed.R.Civ.P. 64, Fed.R. Bankr.P. 7064 and Article 62 of the New York Civil Practice Law and Rules (CPLR) (McKinney 1980 & Supp.1990) an *ex parte* order of attachment against the property of defendant Robert Pincus (Pincus). The *ex parte* order is grounded in an affirmation submitted by the trustee of Our Distribution Co., Inc. (ODC) and his complaint commencing this adversary proceeding.

### I. BACKGROUND

ODC, a corporation of which Pincus is an officer, director and controlling sharehold-

er, filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on July 18, 1988. Three weeks later, on August 8, 1988, Pincus executed the sworn Schedules of Assets and Liabilities and Statement of Business Affairs (the bankruptcy schedules) which ODC submitted to the court. The balance sheet included in the bankruptcy schedules purports to reflect the financial condition of ODC as of June 30, 1988.

From the date its voluntary petition was filed through February 26, 1989, the date of ODC's conversion to a chapter 7 debtor, ODC continued in existence as a debtor in possession with Pincus in control of its operations. Although ODC had been in the business of wholesale and retail sale and distribution of paper goods, dry goods and sundries, the bankruptcy schedules indicated its operations had ceased as of June 30. Upon the conversion Richard E. O'Connell (the Trustee) was appointed trustee. The Trustee has learned that ODC's bankruptcy schedules contain a stunning variety of falsities and omissions, including: the misrepresentation that neither Pincus nor his wife received any compensation; the misrepresentation that ODC had no inventory at the time its petition was filed; the failure to mention the possible interest ODC may have had in the warehouse (the Intervale Warehouse) from which ODC operated its business; and the misrepresentation that ODC maintained no books or records.

There is no dispute as to the inaccuracy of the bankruptcy schedules. Despite swearing to their veracity under penalty of perjury, Pincus now acknowledges that: he and his wife were compensated; ODC not only had inventory but secretly sold it in bulk postpetition to a Marcos Wilamo; the Intervale Warehouse was originally owned of record by ODC; and ODC maintained at least some books and records.

The Trustee brought an adversary proceeding against Pincus and his wife, Mona Pincus.[1] The complaint states four claims against Pincus, two of which arise out of

his prepetition conduct and the other two from his postpetition handling of ODC's affairs. The first claim seeks to avoid, as fraudulent, transfers for no consideration of the Intervale Warehouse to Pincus and of $208,129.53 in ODC funds to Pincus, his wife or entities he controlled. The Trustee alleges that from the date of the alleged transfer to the date of its court ordered sale, the estate lost $100,000 of equity in the Intervale Warehouse and that some of the $208,129.53 was used to pay Pincus' personal expenses. The second claim alleges that these same prepetition transfers constitute corporate waste and misappropriation.

The third and fourth claims involve Pincus' surreptitious postpetition sale of ODC's inventory to Wilamo for $49,800 without notice to creditors. The Trustee further asserts that Pincus, again without notice to creditors, caused ODC to transfer to Wilamo control of its business and the right to use ODC's name in exchange for $.10 per carton of cigarettes and a percentage of the receipts from other items. Finally, the Trustee alleges that Pincus in his own name leased the Intervale Warehouse to Wilamo for eight months at $3,500 per month and pocketed the rent which is property of the estate. The Trustee maintains that this postpetition conduct constitutes a breach of the fiduciary obligations owed to ODC and a misappropriation and conversion of its assets, as Pincus has not accounted for the proceeds of any of the Wilamo transactions and has solely and personally benefitted from them.

## II. STATUTORY REQUIREMENTS

Several provisions of Article 62 of the CPLR must be satisfied before the *ex parte* order of attachment can be confirmed. Pursuant to CPLR 6212(a), the Trustee must show that one or more of the grounds for attachment provided in Section 6201 exists. CPLR 6212(a) also requires the Trustee to show that a cause of action exists, a likelihood of success on the merits and that the amount demanded exceeds all

---

**1.** Although Mona Pincus is named as a defendant in the adversary proceeding, the *ex parte* order of attachment pertains only to Robert Pincus.

known counterclaims. Finally, CPLR 6211(b), by invoking CPLR 6223(b), requires that the Trustee show a continuing need for the levy.

## A. Applicability of CPLR 6201

■ The attachment the Trustee wishes to confirm was issued pursuant to CPLR § 6201(3), as security for the money judgment which he seeks. To use that subsection as a ground for an attachment, the Trustee has the burden of establishing that

the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts.

Pincus challenges the applicability of CPLR 6201(3) on the theory that the Trustee, as plaintiff in the adversary proceeding, is not Pincus' personal creditor. The argument runs that if Pincus' conduct harmed anyone, it was the creditors of ODC and not the Trustee. Pincus overlooks applicable New York precedent holding that causes of actions for mismanagement or diversion of assets by officers or directors belong to the corporation. *See Abrams v. Donati,* 66 N.Y.2d 951, 498 N.Y.S.2d 782, 783, 489 N.E.2d 751, 752 (1985) (citations omitted). Pursuant to section 323 of the Bankruptcy Code, the Trustee is the representative of the estate with capacity to sue and be sued. Section 704 charges the Trustee with collecting the property of the estate. Thus, the Trustee stands in the shoes of the corporation and succeeds to all of the causes of action the estate can bring. Since a claim by the debtor against its officer is property of the estate as provided in section 541, the Trustee has the capacity to sue on behalf of ODC. *Mitchell Excavators, Inc. v. Mitchell,* 734 F.2d 129, 131 (2d Cir.1984); *cf. St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688 (2d Cir.1989) (trustee of debtor subsidiary has standing to bring alter ego action against debtor's parent). Moreover, the Trustee unquestionably is the proper party to assert the causes of action arising from Pincus' alleged postpetition conduct. In short,

the Trustee plainly has standing under CPLR 6201(3).

■ Pincus next argues that the statute is inapplicable because the property secreted and disposed of was not his "own" as required by the statute. He accuses the Trustee of bootstrapping, urging that the Trustee cannot allege Pincus misappropriated assets (which by definition did not belong to him) and at the same time claim that by selling these same assets Pincus disposed of "his" property. Citing *Eaton Factors v. Double Eagle Corp.,* 17 A.D.2d 135, 232 N.Y.S.2d 901 (1st Dep't 1962) Pincus claims for an attachment to lie the property disposed of must belong to the defendant rather than some third party controlled by the defendant.

In *Eaton,* the defendants were sole shareholders and principals of a corporation which was liquidating its assets. Because the corporate assets were not subject to plaintiff's claims, the appellate court rejected the trial court's rationale that disposal of the corporate assets could support an attachment. The *Eaton* court found "[i]n any event" the question was whether the mere liquidation of the assets evidenced an intent to defraud creditors. 232 N.Y.S.2d at 903. Answering this question in the negative, the court vacated the attachment. *Id.* at 903–04. Unlike in *Eaton,* as will be discussed, Pincus has shown the requisite intent. Moreover, in *Eaton* the defendants never exercised control over the corporate assets which were liquidated and sold by the corporation to third parties. In contrast the Trustee has presented evidence that Pincus concealed the existence of assets, misappropriated them, sold them, and has failed to date to account for the proceeds. This factual scenario resembles the one presented the court in *Southeast Chrysler–Plymouth Inc. v. Pieroni,* 96 A.D.2d 745, 465 N.Y.S.2d 626 (4th Dep't 1983).

In *Southeast,* the defendant on the eve of his resignation and without authorization removed a blank check from a corporate account, made it payable to himself, and signed it on behalf of the corporation as drawer. He then had the check deposit-

ed in one bank account, transferred the proceeds through two other accounts and eventually converted the funds to a bank draft which he kept at home. The appellate court upheld the confirmation of attachment despite the fact that the misappropriated funds never belonged to the defendant. 465 N.Y.S.2d at 627.

Further support for an attachment is found in *City of New York v. Citisource, Inc.*, 679 F.Supp. 393 (S.D.N.Y.1988). In *Citisource*, the court awarded to New York City, as plaintiff, an attachment under CPLR 6201(3) where a defendant attempted to either transfer to himself a treasury bill held in the name of a retirement trust account or have the cash value of the bill transferred to his broker. Although the trust agreement provided the defendant could register any of the trust securities in his own name as trustee, the court found that the defendant tried to secrete property when he made inquiries into transferring the bill to himself at the same time he learned of the potential civil liability he faced. 679 F.Supp. at 397. Again, the fact that the defendant sought to secrete property which did not belong to him did not prohibit the issuance of the order of attachment.

Having determined that CPLR 6201(3) is applicable to the claims against Pincus, the court turns to the showing made by the Trustee.

B. Satisfaction of CPLR 6201 Requisites

■ Merely establishing a claim for conversion or misappropriation of corporate assets will not support an attachment. *See Executive House Realty v. Hagen,* 108 Misc.2d 986, 438 N.Y.S.2d 174, 177 (Sup.Ct., Queens Co.1981) (citation omitted). As noted, CPLR 6201(3) requires the Trustee to establish, first, that Pincus secreted or disposed of property and, second, that he did so with an intent to defraud creditors or frustrate the enforcement of a judgment. With his undisputed allegations concerning the postpetition sale of ODC's inventory

the Trustee has met his first burden. Pincus concedes that the bankruptcy schedules which he executed falsely indicated that ODC had no inventory as of June 30, 1988. He concedes that on or about July 26, 1988 without notice to creditors he caused ODC to sell its inventory[2] to Wilamo for $49,800 and that a portion of the proceeds was deposited in the account of a separate entity controlled by Pincus. The Trustee alleges that Pincus either personally retained the proceeds or used them to pay the expenses of other entities he owned. Pincus claims to have used the proceeds to pay various postpetition operating expenses of ODC. Significantly, however, he has produced no documentation whatsoever that payments were made in satisfaction of ODC debts.

■ By retaining control over the inventory and not listing it on the bankruptcy schedules, Pincus concealed the existence of property from the corporation, his creditor. And, as discussed above, the Trustee steps into that creditor's shoes. New York courts have long held that the term "conceal" is the legal equivalent of "secrete." *See, e.g., Jurgens v. Tum Suden,* 32 A.D. 1, 52 N.Y.S. 662 (2d Dep't 1898); *Lomin Corp. v. Kohlhepp,* 151 Misc. 545, 271 N.Y.S. 709 (1934). Not only did Pincus conceal the inventory's existence, but disposed of it by selling it to Wilamo without notice to creditors and without returning the proceeds to ODC or accounting for their disposition.

Pincus offers several explanations for his postpetition conduct. He first asserts that he did not deposit the sale proceeds into an ODC account for fear of attachment by creditors. This justification is doubtful, as the protections afforded a debtor by the Bankruptcy Code are well known and the very reason most entities file. Equally questionable is Pincus' claim that the proceeds were used to pay necessary operating expenses of ODC. The bankruptcy schedules reveal that ODC had terminated

---

2. The undisclosed sale to Wilamo of ODC's business, without the notice required by 11 U.S.C. Section 363(b)(1), also suffices as "secreting" within the meaning of the attachment statute.

The pocketing of the rental payments from Wilamo suffices as evidence of an intent to defraud, as discussed a little later in this decision.

its business as of the end of June. Its expenses had to be limited to such things as utility services necessary to preserve assets. Yet Pincus has utterly failed to provide documentation to substantiate the nature or amount of these expenses, the date of payment or the entity to whom such payments were made. Nothing presented by Pincus is adequate to refute the Trustee's *prima facie* showing that Pincus both secreted and disposed of property.

■ The second prong of CPLR 6201(3) is whether Pincus acted with the intent to defraud creditors or frustrate the enforcement of a judgment. In determining whether an attachment should issue, the intent to defraud should not be lightly inferred. *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326 (2d Cir.1983); *Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769, 500 N.Y.S.2d 278 (2d Dep't 1986). *See also City of New York v. Citisource*, 679 F.Supp. at 396 (applying same standard to establishing an intent to frustrate enforcement of a judgment). But "fraudulent intent is rarely susceptible of direct proof" and "fraudulent acts are as varied as the fish in the sea." *In re Kaiser*, 722 F.2d 1574, 1582, 1583 (2d Cir.1983) (citation omitted).

■ The Trustee has established Pincus' intent to defraud creditors. His fraudulent intent is evidenced not by Pincus' alleged misappropriation of the inventory, but rather by the concealment that such assets existed at all. Pincus not only sold the inventory without notice but later swore that ODC had no inventory when it entered Bankruptcy. Pincus' fraudulent intent is also manifested by his misrepresentation that no books or records existed, books and records through which his lies might be detected.[3]

Pincus argues that the omissions and misstatements were not intended to be fraudulent but were caused by mere carelessness, inadvertence or poor advice of counsel. Viewed in their best, but not necessarily most revealing, light the misstatements evidence a pattern of reckless indifference by Pincus. Such indifference was exactly what the court in *Diorio v. Kreisler–Borg Construction Co. (In re Diorio)*, 407 F.2d 1330 (2d Cir.1969) addressed in finding that "[s]tatements called for in the schedules ... must be regarded as serious business; reckless indifference to the truth ... is the equivalent of fraud." *Id.* at 1331. Although the *Diorio* court drew the conclusion in the context of an objection to discharge the same standard ought be applied to the determination of whether this attachment should be confirmed.

Pincus' claim of inadvertence is undermined by the sheer number of misstatements made on the bankruptcy filings. As the court in *Guardian Industrial Products Inc. v. Diodati, (In re Diodati)* 9 B.R. 804 (Bankr.D.Mass.1981) explained "[i]ndividually, any one answer may have been the result of an innocent mistake. However, the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent...." *Id.* at 808. (citations omitted).

C. Satisfaction of CPLR 6212 Requisites

■ Although the Trustee has established that CPLR 6201(3) provides a ground for attachment, before the order can be confirmed he must also show that causes of action exist, his likelihood of success on the merits and the amount demanded exceeds all known counterclaims. *See* CPLR 6212(a). In making these determinations, "the court must give the plaintiff the benefit of all legitimate inferences that can be drawn from the stated facts." *Nat'l Bank & Trust Co. of North America v. J.L.M.*

---

**3.** Similarly, Pincus' conduct evidences an intent to frustrate the enforcement of a potential judgment. The failure to give notice to creditors, followed by the filing of false bankruptcy schedules, allowed Pincus to reduce the misappropriated assets to cash and disburse the proceeds, thereby impeding the Trustee's recovery of a money judgment against him. This same intent to frustrate judgment is found in Pincus' statement regarding the lack of book and records which would further impede the Trustee's discovery and collection of the proceeds.

*Int'l Inc.*, 421 F.Supp. 1269, 1272 (S.D.N.Y.1976) (citations omitted). The court need not decide the ultimate merits of the controversy to find a likelihood of success on the merits but must be satisfied that the Trustee has established a *prima facie* claim for damages. *J.L.M.*, 421 F.Supp. at 1272; *Deutsche Anlagen–Leasing GMBH v. Kuehl*, 111 A.D.2d 69, 489 N.Y.S.2d 195, 197 (1st Dep't 1985).

■ There is sufficient documentary evidence to suggest that the Trustee has causes of action and that he is likely to prevail on his fraudulent transfer and misappropriation claims regarding the Intervale Warehouse. The evidence includes the no consideration deed conveying the property from ODC to Pincus; the purchase money note naming ODC as obligor; and the various accounting entries indicating that ODC was making interest and principal payments. Pincus' argument that he was the beneficial owner of the property at all times is belied by the corporate documents showing that the payments on the note were made by ODC. Although Pincus has produced three personal checks drawn either to the sellers of the Warehouse or their attorneys, this evidence is inconclusive to establish ownership. The three checks are too few in number and too small in amount to support Pincus' assertion that he personally made all monthly interest and principal payments from closing in 1987 until his default sometime in 1989. The Trustee maintains that even if Pincus can produce additional personal checks, any funds extended by him constituted payment for his 78% ownership of ODC stock. That may be, inasmuch as Pincus has failed to explain the accounting entries on ODC's books or why ODC is named as obligor on the purchase money note.

■ Pincus also asserts that as a matter of law the fraudulent conveyance action must fail because he was not responsible for the decline in value of the Intervale Warehouse. He attributes the loss of equity to a soft real estate market rather than to his actions. The argument is unpersuasive, as a trustee is entitled to recover the value of an asset on the date the fraudu-

lent conveyance was made. *See Reiber v. Baker (In re Baker)* 17 B.R. 392 (Bankr.W. D.N.Y.1982). The very purpose behind the recovery of fraudulent transfers is to restore the debtor to the position it would have been in had the transfer not occurred.

The Trustee has also established his likelihood of success on the claims that Pincus misappropriated and wasted over $208,000 in corporate assets. The Trustee relies upon, and has supplied to this court, copies of ODC's records showing numerous transfers to Pincus, his family or other entities he controlled. These records are adequate to establish a *prima facie* case for damages. No offsetting entries have been supplied reflecting consideration paid for these transfers. Pincus admits that at least some of these transfers, including veterinary services for a family pet and a trip to Florida, "might be deemed questionable corporate expenditures ..." although he quarrels with the Trustee's characterization of the remainder as waste or fraudulent. *See* Pincus' Affidavit In Opposition to the Trustee's Motion to Confirm a Prejudgment Attachment at paragraph 12. Pincus' admissions alone show the likelihood of success on at least part of the claims. His unsupported and undocumented explanation for the balance of the expenditures would, if ultimately determined to be true, constitute only a partial defense.

There also exists the likelihood the Trustee will prevail on his postpetition claims of breach of fiduciary duty, conversion and misappropriation. Pincus admits he transferred ODC's inventory, business and use of its name to Wilamo without notice to creditors. As discussed, Pincus' explanation for this conduct is unsupported by any documentary evidence and on its face is subject to serious doubt. Similarly, the Trustee's claim regarding the postpetition rental income of the Intervale Warehouse enjoys the same likelihood of success found in (and is related to) the claim that the Warehouse was fraudulently transferred prepetition.

Since Pincus has not raised any counterclaims, nor does the Trustee concede any

exist, *see City of New York v. Citisource,* 679 F.Supp. at 398–99, the requisites of CPLR 6212 have been met.

D. Failure to Satisfy CPLR 6211(b) and 6223(b) Requisites

■ The final requirement for confirmation of the attachment is a continuing need for the levy. *See* CPLR 6211(b) invoking 6223(b). A common justification for the continuation of the levy is the need to secure the plaintiff's potential judgment. CPLR 6223(a); *AMF, Inc. v. Algo Distrib.,* 48 A.D.2d 352, 369 N.Y.S.2d 460 (2d Dep't 1975). Here, the Trustee has not even alluded to the continuing need despite the mandate of CPLR 6223 that the burden is his. The only reference in the record concerning the need for security is from Pincus, whose sworn affidavit in opposition to the motion to confirm assures this court that he and his wife "have no intention of leaving" the residence currently subject to the order of attachment and that they have "personal funds and sufficient other tangible personal property ... to satisfy any personal judgment" which may be entered against them. Although Pincus' credibility is not free from doubt, the Trustee has in no way refuted these statements.

Given the strong grounds which the Trustee has demonstrated for an attachment and the substantial sum at stake in the litigation, it is appropriate to allow him to correct the defect in his papers. CPLR 6223(a) permits the court, in its discretion, to allow the plaintiff to correct *any* defect in the papers on a motion to vacate or modify on order of attachment. The legislative history to this provision plainly states that it was "intended to overcome the strict interpretation that any defects are 'jurisdictional.'" *See* CPLR 6223, Legislative Studies and Reports (McKinney 1980); *Stines v. Hertz Corp.,* 42 Misc.2d 443, 444, 248 N.Y.S.2d 242 (Sup.Ct.Kings Co.1964), *rev'd on other grounds,* 22 A.D.2d 823, 254 N.Y.S.2d 903 (2d Dep't 1964), *aff'd,* 16 N.Y.2d 605, 261 N.Y.S.2d 59, 209 N.E.2d 105 (1965). This same relief applies on a motion to confirm an *ex parte* attachment under CPLR 6211(b). 7A J. Weinstein, H. Korn and A. Miller, *New York Civil Practice,* ¶ 6212.01 at 62–100

(1988); *see* CPLR 2001, 2101(f). New proof that would tend to sustain the attachment should always be admitted on a motion under CPLR 6223 unless there is a clear showing of prejudice. J. Weinstein, H. Korn & A. Miller, *New York Civil Practice,* ¶ 6223.07 at 62–251 (1988). Accordingly, the Trustee may submit any supplemental affidavit or other evidence within ten days from the date hereof and the hearing to confirm the *ex parte* order of attachment is continued to February 14, 1990 at 9:45 a.m.