FIREMAN'S FUND INSURANCE COMPANY, Plaintiff,

v.

Rose KAPRALOS and G. Harry Kapralos, Defendants.

No. 94 CV 4180.

United States District Court, E.D. New York.

Oct. 16, 1996.

Kornstein, Veisz & Wexler by William B. Pollard, III, New York City, for Plaintiff.

Rose Kapralos, Old Westbury, NY, Pro Se.

G. Harry Kapralos, Brooklyn, NY, Pro Se.

## ORDER

HURLEY, District Judge.

Presently pending before this Court is plaintiff's motion which seeks:

1) an order, pursuant to Civil Rule 3(j) of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, granting reargument and reconsideration of the Court's decision of July 20, 1995, which granted defendants' motion to dismiss plaintiff's fraud claim, and denied plaintiff's motion for an order of attachment;

2) an order, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, for leave to amend the complaint; and

3) a writ of attachment of Rose Kapralos's real property at 136 Bacon Road in Old Westbury, New York, as well as the home's contents, pursuant to Rule 64 of the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules § 6201.

Also pending is a cross-motion by defendants, made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the remainder of plaintiff's original complaint, coupled with a request that the Court deny plaintiff's motion to file an amended pleading upon the ground that it would be a futile act.

For the reasons set forth below, plaintiff's applications to file an amended complaint and for an order of attachment are granted; its request that the Court reconsider its earlier decision is denied. Defendants' cross-motion is denied.

## INTRODUCTION

Defendants Rose and G. Harry Kapralos have resided since 1983 at 136 Bacon Road, Old Westbury, New York, with title being in the name of Rose Kapralos. The residence, as well as certain of its contents, were insured against fire loss by the Fireman's Fund. The policy went into effect on December 2, 1986.

A fire occurred at the Kapralos' residence on November 29, 1987. As a result, Fireman's Fund made a series of payments to Rose Kapralos totalling $1,310,662.15, with the last payment being made in 1988.

In 1994, Fireman's Fund commenced an action to recover the monies paid upon the ground that Rose and G. Harry Kapralos, "intentionally and pervasively misrepresented to Fireman's Fund the extent of the damage that the fire caused, and the cost to repair and replace what was damaged." (See Compl. ¶ 1.) The complaint set forth causes of action for "Common Law Fraud," "Conversion," "Money Paid by Mistake," and "Constructive Trust."

Defendants moved to dismiss the common law fraud cause of action in the complaint, alleging, *inter alia*, that its claims were contractual in nature, and thus barred by the six year statute of limitations applicable to such actions. After juxtapositioning the substance of the count with the holding in *Brick v. Cohn–Hall–Marx Co.*, 276 N.Y. 259, 11 N.E.2d 902 (1937), the Court concluded that the cause of action denominated as "Common Law Fraud" was in essence a contractual claim given its assertion that all of the monies paid were recoverable by the carrier due to the insured's alleged breach of a policy provision regarding the truthfulness of the information contained in her proof of loss. As a result, that cause of action was dismissed.

It is plaintiff's position in seeking reargument that the Court misapplied *Brick*, leading to an erroneous dismissal of the "Common Law Fraud" claim. However, concurrently—and not as an alternative form of relief—plaintiff has sought leave to amend its complaint, explaining that "[t]his

is done, in part, to address defects in the first claim for relief that the Court perceived in its July 20th Opinion" (Sept. 15, 1995 William B. Pollard, III Aff. ¶ 8) and also to add RICO claims, together with a series of paragraphs, under the heading "FRAUDULENT CONCEALMENT BY THE KAPRALOSES," which seek, *inter alia,* a determination that defendants are equitably estopped from interposing a statute of limitations' defense. (Am.Compl. ¶¶ 54–70, 91–158.)

Defendants counter by cross-moving to dismiss the remaining causes of action in the original complaint, maintaining that all—not just the fraud claim—sound in contract and, accordingly, are time-barred. Their argument continues that even if, *arguendo,* the causes of action are legitimately labeled as fraud claims, they again are time-barred because plaintiff either knew, or should have known of the alleged fraudulent submissions and statements in 1988. In support of that second prong of defendants' argument, the Court is invited to review materials outside the four corners of the original, and of the proposed amended complaints.

## DISCUSSION

### 1. *Motion for Reargument*

Plaintiff has failed to establish an appropriate predicate for reargument, such as misapplication or nonapplication of controlling precedent, an intervening change in the law, or the availability of newly discovered evidence. For reasons to be explained subsequently, the Court finds the argument that it misapplied *Brick* unpersuasive and, therefore, denies plaintiff's motion for reargument. Nonetheless, the subject must be revisited given defendants' position that the proposed amendments to the original complaint should be disallowed as futile.

### 2. *Motion to Amend*

#### a) *Background*

Federal Rule of Civil Procedure 15(a) provides that leave to amend a party's pleadings "shall be freely given when justice so re-

quires." Fed.R.Civ.P. 15(a). The decision of whether to grant permission to amend is addressed to the Court's discretion. *See, e.g., Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Nevertheless, the Supreme Court has indicated that a district court should not deny such a motion absent undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility of the amendment. *Id.*

Here defendants oppose plaintiff's application on the ground of futility. In their view, all causes of action in the original complaint, as well as the proposed amended pleading, are camouflaged contract claims and, as such, are time-barred.

In plaintiff's motion for reargument, it maintains that: (1) the dismissed Common Law Fraud cause of action was replete with allegations of fraud; and (2) it merely made reference to the defendant having breached a provision of the insurance contract for the purpose of delineating plaintiff's damages, rather than to establish a predicate for liability. The first point is certainly accurate. The second point, however, may not be so categorized and will be the subject of much of the discussion which follows.

#### b) *Comparison of Fraud Claims in the Initial and Amended Complaints*

By way of format, attention will first be focused on a comparison of the fraud claims in the initial and in the amended complaints. Thereafter *Brick* will be discussed as to both. That analysis indicates that the new pleading, unlike its predecessor, is not subject to dismissal under Rule 12(b)(6). For that reason, defendants' opposition to plaintiff's request to file an amended complaint is rejected.

■ The viability of the fraud count in the original complaint hinged on the carrier proving that the insured breached a particular provision of the policy in submitting fraudulently tainted claims in 1987, and thus was subject to a direction that *all* monies paid be returned, not just those traceable to fabricated losses.[1] That, in the Court's view,

---

1. (*See* Compl. ¶ 4 ("By the terms of the policy issued to Rose Kapralos, she forfeited her right

was the essence of the claim, triggering its dismissal.

■ The amended complaint's first and second causes of action are also entitled "Common Law Fraud." The first of these causes of action suffers from the same type of infirmities as its predecessor.[2] Verbiage in the second cause of action (*see* Am.Compl. ¶¶ 75–78) partially parallels language in the first, yet its primary thrust is different. Granted, the pleader reiterates that Rose Kapralos, in submitting claims containing some intentional false information, committed fraud by "misrepresent[ing] that the policy of insurance had not been rendered void." (*See* Am.Compl. ¶ 76(c).) That conclusion, of course, is predicated on a particular provision of the contract, which has no significance for present purposes absent proof of its breach by the insured. However, paragraph 76(c) represents only one of the frauds charged. And, unlike the first fraud cause of action in the amended complaint, the second fraud claim is aimed at recovering what was paid as a result of fraud, not the greater sum attributable to the contractual breach by Rose Kapralos. (*Compare* ¶¶ 73 and 74 of the first cause of action (Rose Kapralos entitled to "no payment at all" and demanding return of $1,310,662.15) *with* ¶¶ 77 and 78 (Rose Kapralos "entitled to only a fraction" of $1,310,662.15 and demanding "substantial damage[s] in an amount to be proved at trial").)

### c) *Amendments Will not be Futile*

■ Preliminarily, it should be noted that the mere fact that the alleged fraud arose within a contractual context does not mandate the conclusion urged by defendants. One act may give rise to a cause of action in tort as well as one in contract. *See, e.g., North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 179, 292 N.Y.S.2d 86, 239 N.E.2d 189 (1968) ("[A] contracting party may be charged with a separate tort

liability arising from a breach of a duty distinct from, or in addition to, the breach of contract."); *Rich v. New York Cent. & Hudson River R.R. Co.*, 87 N.Y. 382, 398 (1882). *See also Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 743–44 (2d Cir.1979) ("New York law recognizes the right to plead contract and tort causes of action arising out of a single transaction, although different statutes of limitation may apply to the separate claims.")

However, if suit is brought to enforce a contractual obligation or is otherwise premised on a breach of contract—even if the alleged breach is attributable to fraud—the statute of limitations for contract actions controls. By way of example, in *Brick* the plaintiff sued to recover the difference between the full amount that he should have been paid under the contract and the lesser sum that was actually remitted based on fraudulently altered royalty records. *Brick*, 276 N.Y. at 262, 11 N.E.2d 902. The relief sought depended on the payment provisions of the agreement between the parties being enforced. *Id.* at 263, 11 N.E.2d 902 ("The claim of the plaintiffs is based upon the contract; in other words, if the defendant owes the plaintiffs any money, it is because of the agreement which it made to pay royalties upon which sales were made.").

Defendants argue that the *Brick* holding compels the dismissal of all instant claims, because:

> In *Brick* ... and the case at bar the alleged misrepresentations merely restate the breach of contract claims.... The plaintiff in *Brick* alleged that the defendant took money through false and fictitious statements, i.e. the inaccurate books and sales records. Like the plaintiff in *Brick* Fireman's Fund also alleges that Rose Kapralos received money 'through false and fictitious statements about existing fact'.

---

to receive any payments if she intentionally concealed or misrepresented any material fact....."); *see also id.* ¶¶ 43, 44 and 45 (demanding return of total amount paid).)

**2.** (*See* Am. Compl. ¶¶ 71–74, particularly subparagraph 72(c) ("Defendants fraudulently misrep-

resented that the policy of insurance had not been rendered void [by submitting partially fraudulent claims in violation of a insurance contract] ... when each proof of loss was submitted."); *see also id.* ¶ 74 (demanding return of $1,310,662.15).)

(G. Harry Kapralos's Mem. in Further Supp. of Cross Mot. to Dismiss Compl. at 1.)

Although *Brick* and the present case each involved fraudulent documents being presented to an aggrieved party, the legal considerations are markedly different. The operative distinction is between fraud "intrinsic" to the contract (in which non-performance of a provision of the contract is an element of the cause of action) and such conduct which is appropriately labeled as "extrinsic" (in which non-performance is not a element of the cause of action, although it is relevant in providing the context within which the fraud occurred). To the extent defendants suggest that extrinsic fraud in a contractual setting is limited to fraud in the inducement,[3] their definitional focus is overly narrow. Fraud in the inducement is an example of extrinsic fraud, but there are others. As noted in *Rich,* 87 N.Y. at 398–99:

> It may be granted that an omission to perform a contract obligation is never a tort, unless that omission is also an omission of a legal duty. But such legal duty may arise not merely out of certain relations of trust and confidence, inherent in the nature of the contract itself, as in the cases referred to in the respondent's argument, but may spring from extraneous circumstances, not constituting elements of the contract as such, although connected with and dependent upon it, and born of that wider range of legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud.

Fraud extraneous to a contract may serve as a predicate for a separate cause of action, with a separate statute of limitations. Common to both fraud in the inducement, and other types of extraneous fraud, is the fact that in each instance the aggrieved party is not required to establish, as an element of the cause of action, a breach of contract. Of course, in such situations reference will be made to the contract to place the dispute in context. Thus, one who claims that he was fraudulently induced to enter into a contract must make reference to the contract involved. Similarly, under the second count of the amended complaint at bar, reference is made to the insurance contract. That claim, however, stands alone as sounding in fraud. It is not a camouflaged contract cause of action such as was found in *Brick,* and such as this Court found with respect to the first cause of action of the original, and amended complaints. To recover, plaintiff need only establish the elements of a fraud cause of action, to wit, a deliberate misrepresentation of a material fact, reasonably relied upon by the aggrieved party to his or her detriment. Proof that Rose Kapralos's conduct may also constitute a breach of contract is of no moment except to provide a context within which plaintiff was victimized. To the extent plaintiff confines its theory of recovery solely to the elements of fraud and does not—directly or indirectly—demand damages based on a claimed breach of contract, its action sounds in fraud, with the corresponding statute of limitations being applicable.

■ In sum, count two of the proposed amended complaint is not violative of the rationale espoused in *Brick* because plaintiff is not relying on a contractual breach—six or more years after the fact—to affirmatively advance its claim for damages. How defendants received the disputed sums is explained by reference to the contract; plaintiff's effort under this count of the complaint to recoup some of that money, however, turns on principles of fraud, not contract. Accordingly, the defendants' argument that

---

3. (*See* G. Harry Kapralos's Mem. in Further Supp. of Cross Mot. to Dismiss Compl. at 3 "[A]s Fireman's Fund has not alleged fraud in the inducement, based on *Brick, Triangle* and *Cohen* [v. *Koenig,* 25 F.3d 1168 (2d Cir.1994)], this Court must hold that the essence of all of plaintiff's causes of action are breach of contracts claims and dismiss them as time-barred." *But see id.* n. 6, in which defendant G. Harry Kapralos opines that "all Fireman's Fund's cases are Appellate Division or lower which cannot control

*Brick, Triangle* or *Cohen* except ... *Hargrave* [v. *Oki Nursery, Inc.,* 636 F.2d 897 (2nd Cir.1980)], *North Shore Bottling* and *Rosen* [v. *Spanierman,* 894 F.2d 28 (2d Cir.1990)] which allowed the frauds in because they were fraud in the inducement, *or fraud that was extraneous to the contract as in Rich v. New York Central and Hudson Railroad Co. (where the court states the tort must be extraneous and not an element of the contract,* 87 N.Y. 382, 397–98 ....") (emphasis added).)

permitting the plaintiff to amend its complaint would be a futile act is incorrect.

### 3. *Other Causes of Action*

In addition to plaintiff's restructured Common Law Fraud claims, the amended complaint sets forth a breach of contract claim in its third count followed by claims of conversion, money paid by mistake, constructive trust and four counts of alleged RICO violations.

Defendants argue that all causes of action in the original and amended complaints are essentially restatements of the same contractual claim. As indicated above, the Court finds that the repled second cause of action for Common Law Fraud is free of the pleading problem which plagued the original count one. Accordingly, service of the amended complaint will not be a futile act for one or more of its claims will survive a pretrial attack based on *Brick.*

Granted, the first cause of action in the amended pleading, as well as count three, entitled "Breach of Contract" would appear to be time-barred. Yet, the statute of limitations is an affirmative defense which, if not asserted, is waived. It is apparent that Rose Kapralos will raise that affirmative defense. Indeed, presumably by way of preemptive strike, plaintiff alleges in paragraphs 57 through 70 of its amended complaint that defendants engaged in a series of wrongful acts "over a period of years" in an effort to conceal the nature of their wrongdoings, thereby precluding plaintiff from commencing suit in a timely manner. Given that circumstance, it would be premature for the Court to conclude that the first, third or any other claim in the amended pleading is time-barred. Rather, the more appropriate course is to permit the amended pleading to be served as written, and to await defendants' probable statute of limitations defense, and plaintiff's countervailing estoppel argument.

### 4. *Alternate Argument That Causes of Action are Time–Barred Even if Deemed to Sound in Tort*

█ As an alternative to the argument that all of plaintiff's claims are premised upon an alleged breach of contract and thus are time-barred, the Kapralos' argue that even if, *arguendo,* the "Common Law Fraud" claims have been properly captioned, the claims are still not actionable as being beyond the statute of limitations for fraud. In this regard, defendants ask the Court to consider some of the materials upon which the original complaint was predicated in deciding defendants' motion to dismiss (including an affidavit attached to the Order to Show Cause which pertained to the initial application for an order of attachment), rather than confining its area of inquiry solely to the four corners of the amended complaint. Based on the case cited in support of that request, *viz. Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42 (2d Cir.1991), it would appear that the Court has the discretion to proceed as requested. However, in this case, the exercise of that discretion in the manner requested would be inappropriate. A host of questions surround the issue of what the plaintiff should have known in the exercise of due diligence in the late 1980's. Those questions do not lend themselves to summary resolution based on the materials presently before the Court. Accordingly, the Court declines defendants' invitation to delve into that area at this point.

### 5. *Motion for Order of Attachment*

█ Plaintiff's earlier application for an Order of Attachment was denied based on its dismissal of plaintiff's fraud claim. (*See* Jul. 20, 1995 Order at 12–13.) The amended second Common Law Fraud claim has passed muster. That fact, coupled with the litany of fraud allegations in the moving papers, demonstrates the propriety of issuing an Order of Attachment pursuant to Rule 64 of the Federal Rules of Civil Procedure and Section 6201(3) of the New York Civil Practice Law and Rules. The materials submitted indicate, among other things, that much of the money paid to Rose Kapralos by way of the insurance settlement in 1988 found its way into a bank account located in Switzerland. Moreover, more than ample information has been furnished to indicate that, absent an Order of Attachment, defendants are likely to funnel assets to locations outside of

New York in an effort to make any money judgment ultimately recovered uncollectable.

## CONCLUSION

Plaintiff's motion for reargument is denied; its motions for permission to file an amended complaint, and for an order of attachment, are granted.

Defendants' cross-motion is denied.

SO ORDERED.