## TANNENBAUM v. GOTTLIEB.

(Supreme Court, Appellate Division, First Department. February 5, 1897.)

ATTACHMENT—FRAUDULENT DISPOSITION OF PROPERTY—EVIDENCE.

 Attachment on the ground that defendant has disposed of his property with intend to defraud his creditors is authorized by evidence that defendant was a retail jeweler, doing business on a small scale, that he has made an assignment for the benefit of creditors, and that, seven weeks before the assignment, his assets were $20,000 in jewelry and $10,000 in cash, and his liabilities only $800.

Appeal from special term, New York county.

Action by Lippman Tannenbaum against Alter Gottlieb, in which there was an attachment of defendant's property. From an order vacating the warrant of attachment on the papers on which it was granted, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Franklin Bien, for appellant.
Charles Goldzier, for respondent.

BARRETT, J. If the case for an attachment here rested solely upon the testimony referred to by the learned judge at special term, we would have no hesitation in affirming the order appealed from. But there is other testimony, not referred to in the opinion, which we think leads to a different conclusion from that arrived at below. That testimony is substantially as follows: Upon the 7th day of July, 1896, the defendant informed the plaintiff that he owed but $800, and that his assets amounted to $30,000. Of this latter sum, he said that $20,000 was made up of merchandise, and the remainder of cash and bills receivable. There is no suggestion that this statement was false. On the contrary, the plaintiff affirms that it was true. And he supports its truthfulness in an important particular by the affidavit of one Kastenbaum, who deposes that on the 5th day of August, 1896, the defendant told him that his assets then aggregated at least from $22,000 to $25,000. Of this, the defend-

ant declared that about $5,000 was in cash, and some $15,000 in jewelry and diamonds. He at that time exhibited to Kastenbaum a large amount of money, consisting of bills in denominations of $50 and $100, as well as gold, and also exhibited the jewelry and diamonds. We may fairly conclude, upon all this evidence, that the defendant's original statement to the plaintiff was quite true. At all events, a prima facie case establishing the facts thus admitted is made out. The defendant's condition upon the 7th day of July, 1896, being thus proved, it further appears that less than two months later, namely, on or about the 28th of August, 1896, he was, or declared himself to be, insolvent. Upon the latter day he made a preferential assignment for the benefit of creditors. It also appears that prior to the assignment he carried on a retail jewelry and diamond business, catering to but a small class. The plaintiff deposes that he is well acquainted with the trade carried on by the defendant; that he does not sell in large quantities in the regular or ordinary course of business, but deals with the public generally on but a small scale. Assuming, as we must in the absence of any denial, that the defendant's condition on the 7th of July was what he said it was, the inference is almost irresistible that he is still perfectly solvent, and that he has disposed of his comparatively large estate with intent to cheat and defraud his creditors. What has become of his $30,000 of assets? What has become of all the money, jewelry, and diamonds that he exhibited to Kastenbaum about three weeks before he made his assignment? It seems inconceivable that, with but $800 of indebtedness on the 7th of July, he should, in this small retail business, where he was subject to no great or sudden losses, have actually lost upward of $20,000 in about seven weeks. All this clearly calls for explanation. Upon its face, undenied and unexplained, it points convincingly to a fraudulent disposition of those assets. The defendant moved to vacate this attachment solely upon the papers upon which it was granted. We think these papers made out a prima facie case of a fraudulent disposition by the defendant of his property, and that he was certainly called upon to explain the statements and facts to which we have referred.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs, without prejudice, on payment of these costs, to such an application upon affidavits as the defendant may be advised to make. All concur.