**BANK LEUMI TRUST COMPANY OF NEW YORK, Plaintiff,**

v.

**ISTIM, INC., Opal Finance Corporation Ltd., and Opal Trade Corp., Defendants.**

**OPAL FINANCE CORPORATION LTD., Cross–Claimant,**

v.

**ISTIM, INC., Cross–Claim Defendants.**

**ISTIM, INC., Cross–Claimant,**

v.

**OPAL FINANCE CORPORATION LTD. and Opal Trade Corp., Cross–Claim Defendants.**

No. 94 Civ. 8293(SAS).

United States District Court, S.D. New York.

March 27, 1995.

Ronald M. Neumann, Carlos A. Cabrales, Office of the Gen. Counsel, Bank Leumi Trust Co. of New York, New York City, for plaintiff Bank Leumi Trust Co. of New York.

William J. Ferlanti, New York City, for defendant-cross-claimant Istim, Inc.

Barry Michael Okun, Gilbert A. Samberg, Randi S. Miller, Rosenman & Colin, New York City, for defendant-cross-claimant Opal Finance Corp. Ltd. and Opal Trade Corp.

SCHEINDLIN, District Judge.

Cross-claimant Opal Finance Corporation Ltd. ("Opal") requests confirmation of an *ex parte* Order of Attachment on the monies previously held on account at Bank Leumi Trust Company of New York ("Bank Leumi")[1] totalling approximately $261,139.43 in the name of the cross-claim defendant Istim, Inc. ("Istim"). The parties agree that Opal must first show that a cause of action exists

---

1. Such monies were placed in the Court Registry Investment System by this court pursuant to an Ex Parte Order of Attachment dated December 6, 1994 (Sweet, J. as Part I Judge).

on which Opal will most likely prevail and that the amount of Istim's counterclaim is just and, second, that Istim, with intent to defraud Opal or to frustrate the enforcement of a judgment that might be rendered in Opal's favor, has attempted to or is about to remove such funds from this jurisdiction. N.Y.Civ.Prac.L. & R. ("CPLR") 6201(3) and 6212(a) (McKinney 1994). Because Opal has sustained its burden of demonstrating these requirements, the motion to confirm the *ex parte* attachment order is granted.

## I. FACTS

Opal, a corporation organized and existing under the laws of Guernsey, Channel Islands, is a finance company. Istim, a New York corporation, is a trading company that exports machinery, raw materials and other goods to factories in Israel and imports industrial and other manufactured goods from Israel to the United States. Interpleader Complaint ("Compl.") at ¶¶ 3–5; Affidavit of Tsvi Katsir, President of Opal Trade Corp., in Support of Attachment ("Katsir Aff.") at ¶ 5; Affidavit of Hendrik J. Keilman, Managing Director of Phoenix Beheer N.V., in Opposition to Motion to Confirm *Ex Parte* Order of Attachment ("Keilman Aff.") at ¶ 5.

During 1993, Opal loaned Istim approximately $2,000,000. As collateral and security for the loan, Istim tendered to Opal certain drafts, executed a security agreement in favor of Opal, and allegedly assigned the bank account at Bank Leumi, which contained the funds presently at issue, to Opal. Opal asserts that, as of October 31, 1994, Istim defaulted on its loan. Opal claims that not less than $447,415.31 remains due and owing on the loan. Katsir Aff. at ¶ 7.

On or about November 15, 1994, Istim closed its only office in the United States, located in New York City, and claims to be conducting business out of its attorney's offices. Declaration of William J. Ferlanti, attorney for Istim, in Opposition to Motion to Confirm *Ex Parte* Order of Attachment, dated January 6, 1995 ("Ferlanti Decl.") at ¶ 13.

The only asset Istim appears to have remaining in the United States is the bank account formerly at Bank Leumi. Katsir Aff. at ¶ 1; *see* Notice of Motion to Confirm *Ex Parte* Attachment ("Mot. to Confirm") at ¶ 8. Both Istim and Opal contacted Bank Leumi on numerous occasions to attempt to take possession of these funds. *See* Compl. at ¶¶ 8–24.

Bank Leumi, as plaintiff-stakeholder, commenced an interpleader action in November, 1994 to resolve the competing claims to the funds it held on account. Although the account was in the name of Istim, Opal lays claim to the funds on the grounds that it has a valid security interest in the account; Istim, however, disputes Opal's assertion, claiming ownership of the funds. After commencement of the interpleader suit, Opal obtained an *ex parte* order of attachment. *See supra* n. 1.

Opal seeks confirmation since these funds appear to be Istim's only substantial asset remaining in the United States, now known by Opal to be amenable to attachment.[2] Katsir Aff. at ¶ 1.

## II. DISCUSSION

■ New York law governs orders of attachment issued by this Court. Fed. R.Civ.P. 64. Under New York law, a party is entitled to an *ex parte* order of attachment upon demonstrating that (1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) the defendant "with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts;" and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to the party seeking attachment. CPLR §§ 6212(a) and 6201(3). Once the *ex parte* order of attachment is issued, the party obtaining the attachment, on a motion to confirm made on notice to the

---

**2.** Opal believes Istim may also have $24,303.71 in the custody of its lawyer, Yerushalmi, Shiboleth, Yisraeli & Roberts. Affidavit of Barry Michael Okun, special counsel to Rosenman & Colin, in Support of Motion to Confirm *Ex Parte* Order of Attachment, executed December 12, 1994 ("Okun Aff.") at ¶ 5 n. 3.

party whose property is subject to the attachment, must once again demonstrate that the foregoing requirements are met, and also demonstrate a need for continuing the levy. CPLR §§ 6211(b) and 6223(b).

■ As to the first and second requirements, *i.e.,* that a claim for a money judgment exists and that the movant is likely to succeed on the merits, "the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts." *National Bank & Trust Co. v. J.L.M. International, Inc.,* 421 F.Supp. 1269, 1272 (S.D.N.Y.1976) (quoting *Marklin v. Drew Properties Corp.,* 280 F.Supp. 176, 179 (S.D.N.Y.1967)).

■ Opal has presented sufficient evidence by affidavits and other written evidence that it loaned Istim approximately $2 million which has not been fully repaid. Opal has also supplied a computer print-out from Istim's former office, which indicates an unpaid balance on the Opal loan. *See* Reply Affidavit of Tavi Katsir in Support of Motion to Confirm Attachment ("Reply Aff.") at ¶¶ 3–10; Katsir Aff. at ¶ 7. In addition, Opal is in possession of the drafts tendered from Istim in exchange for the loan. Finally, Istim has failed to offer any proof that it has repaid this loan, such as cancelled checks or any other form of payment. Thus, Opal has fulfilled the first two requirements of CPLR § 6212(a).

■ In determining whether the fourth requirement, that "the amount demanded from the defendant exceeds all counterclaims known to the plaintiff" is met, courts are to examine only the amount of the counterclaims *that the plaintiff concedes are just. See City of New York v. Citisource, Inc.,* 679 F.Supp. 393 (S.D.N.Y.1988); *Mishkin v. Kenney & Branisel, Inc.,* 609 F.Supp. 1254, 1256 n. 5 (S.D.N.Y.1985), *aff'd* 779 F.2d 35 (2d Cir.1985); *Shearson Hayden Stone, Inc. v. Scrivener,* 480 F.Supp. 256 (S.D.N.Y.1979), *rev'd on other grounds. See also American Jerex Co. v. Universal Aluminum Extrusions, Inc.,* 340 F.Supp. 524 (E.D.N.Y.1972) (requirement of CPLR § 6212(a) that papers on a motion for an order of attachment must show "the amount demanded from defendant above all counterclaims known to plaintiff is construed to mean only those counterclaims that a plaintiff is willing to concede as just;" existence of a pending counterclaim which is contested does not defeat an attachment). Because Opal contends that Istim's counterclaims are entirely without merit, this requirement is satisfied. Reply Aff. at ¶ 11.

■ Thus, the motion to confirm turns on whether Opal has satisfied the third requirement. To fulfill this requirement, CPLR § 6201(3) requires proof of two elements: (i) that the defendant either is about to or has assigned, disposed of, encumbered or secreted property, or removed it from the state, and (ii) that the defendant has acted or will act with the intent to defraud his or her creditors, or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor.

### A. *Disposal of Assets*

■ The first element need not be demonstrated by actual proof of disposition or secretion of property. 7A Weinstein–Korn–Miller, *New York Civil Practice* ¶ 6201.12 (1994 ed.) ("CPLR"). The transfer or disappearance of an abnormal amount of property will suffice. *Tannenbaum v. Gottlieb,* 14 A.D. 105, 43 N.Y.S. 469 (1st Dept.1897). The burden is on the plaintiff to demonstrate that the defendant has begun the process of removing its assets. *Dickey v. Findeisen & Kropf Mfg. Co.,* 177 A.D. 861, 164 N.Y.S. 989 (1st Dept.1917).

■ Opal has satisfied this prong of the test. Opal claims, and Istim does not dispute, that Istim has no substantial assets in the United States other than the funds at issue previously in the bank account. In two letters dated August 29, 1994 and another dated September 7, 1994, Istim requested Bank Leumi to transfer the balance of its funds to a bank in the Netherlands. *See* Compl.Ex. "B." Thus, Opal has made a *prima facie* showing of Istim's preparation to remove its remaining assets from this jurisdiction.

B. *Intent to Defraud Creditors or to Frustrate Enforcement of a Judgment*

The second requirement under CPLR § 6201(3) is that the plaintiff show that the defendant is about to assign, encumber, secrete or remove property from the state with the intent to defraud creditors.

A party relying upon a right to a remedy against another based upon the defendant's alleged commission of a fraud, must show affirmatively facts and circumstances necessarily tending to establish a probability of guilt, in order to maintain his claim.

*O'Rourke v. Rankin,* 193 A.D. 494, 497, 184 N.Y.S. 845 (2d Dept.1920) (quoting *Morris v. Talcott,* 96 N.Y. 100, 107 (1884)). More precisely, "[t]he moving papers must contain evidentiary facts as opposed to conclusions establishing the fraud." *Marina B. Creation S.A. v. de Maurier,* No. 86 Civ. 9748, 1988 WL 10873, 1988 U.S.Dist. LEXIS 1096, slip op. (S.D.N.Y. Feb. 8, 1988) (Sweet, J.).

While the defendant is entitled to a presumption of innocence, *Morris,* 96 N.Y. at 107, "a court is not required to give credence to a story so inherently impossible as to leave no doubt that it is not true." *Arzu v. Arzu,* 190 A.D.2d 87, 90, 597 N.Y.S.2d 322 (1st Dept.1993). Furthermore, "[i]t is not always practicable to establish by proof the existence of a fraudulent intent ... even when in reality it exists. Direct proof of the fact can rarely be obtained, and when it is established it must ordinarily be inferred from the circumstances." *Stevens v. Middleton,* 26 Hun. 470, 472 (1st Dept.1882). By submitting affidavits which make "a *prima facie* evidentiary showing of secretion of assets by defendants in fraud of creditors, and particularly in fraud of plaintiff," *Kneapler v. Braufman,* 266 A.D. 756, 41 N.Y.S.2d 261 (2d Dept.1943), the plaintiff has fulfilled his burden of proof. The burden then shifts to the defendant to explain the actions or to rebut the plaintiff's allegations. *Stewart v. Lyman,* 62 A.D. 182, 186, 70 N.Y.S. 936 (1st Dept. 1901).

In the instant case, Opal has presented six acts by Istim evidencing an intent to defraud creditors:

i. Istim's removal of its assets from within this jurisdiction;

ii. Istim's attempt to remove the funds from the Bank Leumi account out of this jurisdiction;

iii. The closing of Istim's sole office in the United States coupled with removal of its equipment;

iv. Istim's preference of one creditor over another;

v. The removal of Uri Kaplan as president of the corporation; and

vi. The lack of any substantial funds left within this jurisdiction.

Thus, the Court must decide whether (i) Opal has demonstrated a reasonable inference of an intent to defraud; and (ii) Istim has adequately rebutted Opal's allegations. To reach this decision, it is necessary to examine each of the six acts alleged as evidence of an intent to defraud.

### i. *Removal of Assets from Within This Jurisdiction*

It is well established in New York that the mere removal or other disposition of property by a debtor is not a sufficient ground for an attachment. *P.T. Wanderer Assoc. v. Talcott Communs. Corp.,* 111 A.D.2d 55, 489 N.Y.S.2d 179 (1st Dept.1985); *Computer Strategies, Inc. v. Commodore Business Machs., Inc.,* 105 A.D.2d 167, 483 N.Y.S.2d 716 (2d Dept.1984); *Eaton Factors Co. v. Double Eagle Corp.,* 17 A.D.2d 135, 232 N.Y.S.2d 901 (1st Dept.1962). Each of these cases are distinguishable, however, for the following reasons.

Opal claims that Istim has not only removed its assets from New York but has also removed them from the United States. Furthermore, Opal alleges that Istim has instructed its account debtors not to make payments to Istim, but instead to the foreign creditors of Istim, foreign affiliates of Istim, or foreign creditors of foreign affiliates of Istim. *See* Katsir Aff. at ¶ 14; Opal's Answer to Interpleader Complaint, Claim in Interpleader, and Cross–Complaint, dated November 29, 1994 ("Opal Answer") at ¶¶ 43–46. As a result, Istim has no funds within the United States nor will it so long as its debtors are not paying Istim. Istim has made no attempt to disprove or rebut either of these accusations.

### ii. Attempted Removal of Assets from Within This Jurisdiction

In New York, a debtor's attempt to remove funds from within this jurisdiction, standing alone, is not sufficient to establish an intent to defraud creditors, as a debtor might have a legitimate business purpose for this action. *Eaton Factors,* 17 A.D.2d at 135, 232 N.Y.S.2d 901. When such an act, however, is coupled with other evidence of a debtor attempting to defraud a creditor, a New York court has recently granted an order of attachment. *Societe Generale Alsacienne De Banque v. Flemingdon Dev. Corp.,* 118 A.D.2d 769, 500 N.Y.S.2d 278 (2d Dept.1986) (intent to secrete assets in order to frustrate collection on a check evidenced an intent to defraud creditors).

Both Opal and Bank Leumi have submitted *prima facie* evidence that Istim attempted to transfer the funds at issue from an account in Istim's name at Bank Leumi in New York to an account in the name of Istim's sole shareholder, Phoenix Beheer, N.V., maintained in a Dutch bank. In response, Istim asserts that the reason for the transfer was because the signatories on the account, Hendrik J. Keilman, Andre Jansen and Annemiek Benner, live and conduct business in Amsterdam. *See* Answer to Interpleader Complaint, Claim in Interpleader, Answer to Claim in Interpleader, Answer to Cross–Complaint and Cross–Complaint of Istim, dated January 6, 1995 ("Istim Answer") at ¶¶ 23–24; *see also* Istim's Memorandum of Law in Opposition to Opal Finance's Motion to Confirm *Ex Parte* Order of Attachment, dated January 6, 1995 ("Istim Mem.") at 5. This explanation is not terribly credible.

Istim further alleges that the funds are necessary to pay off a creditor, Banca Commerciale Italiana, for its demand of over $550,000. *See* Ferlanti Decl. at ¶ 6. Since the New York branch of Banca Commerciale Italiana is making the demand and the money is due to be paid to the same New York branch, this justification is tenuous as well.

### iii. Closing the New York Office and Removing Inventory

It has long been established that moving a business to another state and removing inventory from a debtor's warehouse to keep it out of a creditor's reach does not in and of itself establish a fraudulent intent. *See Computer Strategies,* 105 A.D.2d 167, 483 N.Y.S.2d 716; *Dickey,* 177 A.D. 861, 164 N.Y.S. 989.

The fact that Istim has closed its New York office, and allegedly conducts its business out of its attorney's office, is insufficient to establish an intent to defraud. Yet, Istim, a New York corporation, which conducts a large part of its business with American clients, has offered no credible explanation for closing its New York office. Furthermore, while Istim claims that its inventory and equipment are at its attorney's office, it has not offered any evidence that it is actually conducting business from that location. *See* Ferlanti Decl. at ¶ 13.

### iv. Preference of One Creditor Over Another

New York courts have held that a preferential payment of an honest debt does not establish intent to defraud or to frustrate a judgment. *Merriam v. Wood & Parker Lithographing Co.,* 19 A.D. 329, 46 N.Y.S. 484 (1st Dept.1897); *Stein v. Levy,* 8 N.Y.S. 505 (1st Dept.1890). Certainly, without additional allegations, preferential payment to certain creditors

> will not support an attachment under CPLR 6201(3). Preferential payments, however, may be evidence of a larger scheme to defraud creditors or to frustrate the enforcement of a judgment, and if such a plan is established, attachment will be available. CPLR ¶ 6201.12.

Istim attempted to remove funds from the jurisdiction in order to pay Banca Commerciale Italiana, a legitimate creditor. This act by itself is insufficient to establish the requisite intent. However, when combined with the other suspicious acts, discussed herein, it may establish an intent to defraud.

### v. Removal of the President

Opal's final allegation is based on the hiring and firing of Istim's former president and director, Mr. Uri Kaplan. Opal asserts that Kaplan was removed from his position, then reinstated with limited signatory powers, and then removed again because he was cooperating in the repayment of Istim's debt to Opal. *See* Comp. ¶¶ 14–18 and Exs. "A" & "B"; Katsir Aff. ¶ 13(a).

The documents submitted by Istim contain several inconsistencies regarding its actions concerning the hiring and firing of Kaplan. According to Istim's Answer to the Complaint, Kaplan was fired during the early to middle part of 1994 for failing to coordinate his activities with Phoenix, failing to act in accordance with corporate policy, taking certain actions without the agreed upon consent of Phoenix, and other activities which were contrary to the interests of Istim. Istim Answer at ¶ 18. Then, on or about May 23, 1994, Istim asserts that Kaplan was reinstated as president, with limited signatory powers, i.e., he did not have authority to sign checks, "in order to avoid a dispute with" him. Istim Answer at ¶ 21. Finally, on or about July 13, 1994, Kaplan was again removed as president. Istim Answer at ¶ 23. Istim, however, argues in its Memorandum in Opposition to Opal's Motion to Confirm *Ex Parte* Order of Attachment that Opal is unlikely to succeed on the merits of the case because, it believes, Kaplan substantially overpaid Opal. In fact, Istim admits that Opal "knowingly receiv[ed] unauthorized payments from Kaplan." Istim Mem. at 7. Thus, Opal's claim that Kaplan was fired for assisting in the repayment of the loan is confirmed by Istim's own pleadings.

### vi. Lack of Attachable Assets

In *P.T. Wanderer*, 111 A.D.2d 55, 489 N.Y.S.2d 179, the court was presented with three pieces of evidence in support of plaintiff's application for an order of attachment: (i) removal of all assets from New York State (but not from the United States entirely); (ii) maintaining bank accounts outside the jurisdiction of New York's courts; and (iii) defendant was in desperate financial straits. In denying the motion for an order of attachment, the court held that the record contained nothing more than conclusory allegations and, as previously mentioned, lacked facts indicating a fraudulent concealment of assets.

*P.T. Wanderer* is distinguishable from the case presently before this Court.[3] First, Istim has no significant assets anywhere within the United States. Thus, in the event Opal succeeds on the merits of the case, Istim may have little or no assets for Opal to attach. Second, as analyzed below, Opal has presented direct and circumstantial evidence of Istim's attempt to defraud its creditors. Opal has fulfilled its burden of proof by demonstrating a reasonable inference of an intent to defraud creditors by the following allegations:

1. Istim has removed all of its assets from the United States;

2. Istim has instructed its debtors not to make payments to it;

3. Istim has attempted to remove the funds on account with Bank Leumi to a Dutch account in the name of its sole shareholder;

4. Istim has attempted to give preference to paying Banca Commerciale Italiana over Opal;

5. Istim closed its New York office and removed all of its inventory and equipment; and

6. Istim suspiciously fired, then rehired without signatory powers, and then fired again its president who allegedly was paying off Istim's debt to Opal against the wishes of Istim.

### III. CONCLUSION

New York courts have held that "a mere showing of liquidation or disposal by a debtor of its business assets," *Eaton Factors*, 17 A.D.2d at 136, 232 N.Y.S.2d 901; removing inventory from the debtor's warehouse to keep it out of the creditor's reach, *Computer Strategies*, 105 A.D.2d 167, 483 N.Y.S.2d 716; moving a business to another state, *Dickey*, 177 A.D. 861, 164 N.Y.S. 989; and giving preference over claims of bona fide creditors, *Merriam*, 19 A.D. 329, 46 N.Y.S. 484, are not *alone* sufficient to prove an intent to defraud.

**3.** *P.T.Wanderer* was decided in a 3–1 decision by Judges Murphy, Ross, Lynch and Milonas. Judge Ross's dissent stated that "the majority ha[s] exalted form over substance and ha[s] disregarded the obvious ploy of this defendant, a foreign corporation, to defeat the plaintiff's attempt to recover money allegedly due." 111 A.D.2d at 56, 489 N.Y.S.2d 179. Judge Ross also quotes Joseph M. McLaughlin's Practice Commentaries which state "that the language about frustrating the enforcement of a judgment ... was added by the Legislature, apparently to make it *easier* for the plaintiff to obtain an order of attachment." CPLR § C6201:4 (emphasis added).

Nonetheless when all or most of these factors are present in combination, this Court finds that proof exists of an intent to defraud creditors or frustrate the enforcement of a judgment.

But the question really is, whether, when all the visible means and resources of a departing debtor appear to be insufficient to discharge his obligations, the courts are to assume that he had some invisible means of paying his debts. I think not. No court is required to worry itself to find excuses for a fugitive from debt.

*Schoonmaker v. Spencer*, 54 N.Y. 366, 372 (1873) (Reynolds, C.).

Thus, Opal has demonstrated that all four requirements of CPLR § 6212(a) have been satisfied. Accordingly, plaintiff's Motion for Confirmation of the *Ex Parte* Order of Attachment is granted.

SO ORDERED.