**BUY THIS, INC.,**
**Plaintiff/Counterclaim Defendant,**

v.

**MCI WORLDCOM COMMUNICATIONS, INC., d/b/a MCI Worldcom,**
**Defendant/Counterclaim Plaintiff,**

v.

**Baruch Herzfeld, individually, and Dollar Phone Corp., Additional Counterclaim Defendants.**

**No. 01 CIV. 8829(NRB).**

United States District Court,
S.D. New York.

Nov. 27, 2001.

Sean Anthony Moynihan, Klein, Zelman, Rothermel & Dichter, L.L.P., New York City, for plaintiff.

Patrick C. Duncan, Jr., Michael Sean O'Reilly, Jennifer A. Endress, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York City, for defendant.

## MEMORANDUM AND ORDER

BUCHWALD, District Judge.

Plaintiff Buy This, Inc. ("Buy This") sued MCI Worldcom Communications, Inc. ("MCI") in New York State Court for, *inter alia*, breaching a contract for telephone service. MCI subsequently removed the action to this Court and asserted several counterclaims, including claims for fraud and breach of the same contract.

MCI then moved by order to show cause for an order of attachment to be entered against Buy This and its President and sole shareholder, Baruch Herzfeld (collectively, the "Buy This defendants"). Because MCI has not made the required statutory showing, we refuse to order the requested attachment. The motion is denied.

## I. BACKGROUND

In late March or early April of 2001, Buy This entered into an agreement with MCI for telephone service. As part of a promotion MCI was running at the time to attract new customers, the agreement provided that Buy This would receive free telephone service during the sixth month of the relationship (the "'free' sixth month"). During the first five months of service, Buy This accrued charges ranging from $42.62 to $813.08 per month. When the sixth month arrived, Buy This sold the "free" minutes it received from MCI to another entity, Dollar Phone Corp. ("Dollar Phone"), and the number of minutes on Buy This's account with MCI increased dramatically. MCI alleges, for example, that it detected 980 calls for 6,981 minutes during one 24–hour period on the Buy This account. Affidavit of Dante Herrera ¶ 14. Had these calls not been made during the "free" sixth month of service, MCI would have charged Buy This nearly $14,000 for these calls. *Id.* MCI's Fraud Control Department noticed this radical change, and, believing that Buy This was engaged in fraud, MCI disconnected Buy This's service on September 21, 2001.[1]

Buy This then sued MCI in state court for breaching the telephone service con-

---

1. Except for the period from September 25 to October 1, 2001, when a temporary restraining order issued by the state court directing MCI to restore service to Buy This was in effect, MCI has continued to refuse to provide any telephone service to the Buy This defendants.

tract between the parties.[2] MCI removed the case to this Court[3] and asserted counterclaims against the Buy This defendants, including claims for fraud and breach of contract.[4] Shortly thereafter, MCI moved by order to show cause for an attachment of the funds the Buy This defendants earned from selling minutes obtained during the "free" sixth month to Dollar Phone.[5] This is the motion presently before the Court.

Due to the time-sensitivity of the present motion, the Court ordered an expedited briefing schedule. Oral argument was held on November 19, 2001.

## II. DISCUSSION

### A. Legal Standard

Property may be attached by a federal court "under the circumstances and in the manner provided by the law of the state in which the district court is held." Fed. R.Civ.P. 64. Thus, New York law governs the issuance of an attachment by this Court. Furthermore, the parties and the Court agree that sections 6201 and 6212 of the New York Civil Practice Law and Rules ("CPLR") govern the issuance of an order of attachment in New York, and, therefore, in this Court.

The party moving for the attachment, here MCI, has the burden of proving the four elements set out in CPLR § 6212(a). *Asdourian v. Konstantin*, 50 F.Supp.2d 152, 158 (E.D.N.Y.1999). Thus, MCI must "show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that [it] will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the [Buy This defendants] exceeds all counterclaims known to the [counterclaim plaintiff, MCI]." CPLR § 6212(a).

To fulfill the third element of this section, MCI relies solely on paragraph (3) of CPLR § 6201. *See* MCI's Memorandum at 15–17. This paragraph states that "grounds for attachment" exist when "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts." CPLR § 6201(3). Thus, to prove that the "grounds" for the proposed attachment, MCI must show both (1) that the Buy This defendants have engaged, or are about to engage, in one of the proscribed acts, and (2) that they did so with the actual intent to defraud MCI.

■ In sum, MCI must prove each and

2. In addition to the breach of contract claim, Buy This's complaint also alleged three other causes of action, namely, tortious interference with business relationships, misrepresentation, and a claim for injunctive relief.

3. Buy This is a New York corporation and MCI is a Delaware corporation with its principal place of business in Mississippi. Thus, the basis for removal jurisdiction is diversity of citizenship. 28 U.S.C. §§ 1332, 1341.

4. In total, MCI has asserted eleven counterclaims: Breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, fraudulent con-

cealment, conspiracy to defraud, willful misconduct, conversion, unjust and unreasonable practices in violation of 47 U.S.C. § 201(b), alter ego liability, and a claim for a declaratory judgment.

5. The Order to Show Cause, dated October 10, 2001, in addition to ordering the Buy This defendants to show cause why an order of attachment should not be entered, also granted MCI leave to conduct certain expedited discovery, including a deposition of Mr. Herzfeld. *Id.* at 3–4. MCI deposed Mr. Herzfeld on November 7, 2001, prior to filing its Reply Memorandum.

every one of these five [6] elements in order to meet its burden under New York law. MCI's task is particularly daunting because it is well established that the New York attachment statutes are construed strictly against those who seek to invoke the remedy. *See, e.g., Reading & Bates Corp. v. National Iranian Oil Co.,* 478 F.Supp. 724, 726 (S.D.N.Y.1979); *Penoyar v. Kelsey,* 150 N.Y. 77, 44 N.E. 788, 789 (1896) (grounding this holding in the statutory nature of the attachment remedy); *see, e.g., Raphael v. Gibson,* 65 A.D.2d 553, 554, 409 N.Y.S.2d 18 (2nd Dep't 1978) (plaintiff's failure to fulfill technical aspect of statute rendered attachment order "null and void"); *see generally* Jack B. Weinstein, et al., 12 New York Civil Practice ¶ 6201.02 (March 1999) (a "compelling reason for the rule of strict construction [of the New York attachment statutes] is that an attachment deprives the defendant of the use and enjoyment of property at an extremely embryonic stage of the litigation and long before the defendant's liability to the plaintiff is established.").

■ Moreover, when attachment is sought to provide security,[7] as it is here, rather than to obtain *quasi in rem* jurisdiction, "attachment should issue only upon a showing that *drastic action* is required for security purposes." *Reading & Bates,* 478 F.Supp. at 726–27 (emphasis supplied) (citing *Incontrade, Inc. v. Oilborn International, S.A.,* 407 F.Supp. 1359, 1361 (S.D.N.Y.1976)).

■ Finally, even if MCI fulfills its burden of proving all the elements of CPLR §§ 6212(a) and 6201(3), "it would still be possible to deny the harsh remedy of attachment, for attachment is a discretionary remedy." *Thornock v. Kinderhill Corp.,* 712 F.Supp. 1123, 1132 (S.D.N.Y.1989); *accord Trigo Hnos., Inc. v. Premium Wholesale Groceries, Inc.,* 424 F.Supp. 1125, 1133 (S.D.N.Y.1976).

## B. Analysis

■ The property MCI seeks to attach is the "basket of money" that the Buy This defendants have received or will receive from Dollar Phone in consideration for the minutes sold to Dollar Phone during the "free" sixth month. *See* MCI's Memorandum at 2. For the reasons discussed below, we find that MCI has failed to prove that "grounds" exist for this proposed attachment. *See* CPLR §§ 6201(3) and 6212(a). As MCI bears the burden to prove each one of the elements listed in CPLR § 6212(a), this failure alone requires us to deny the present motion.

■ In order for the Court to even consider attaching the property at issue here, MCI must show that the Buy This defendants have "assigned, disposed of, encumbered or secreted, or removed [ ] from the state" the proceeds of the sale of airtime minutes to Dollar Phone, or are "about to do any of these acts." CPLR § 6201(3). As this language is to be construed strictly, we limit these terms to their plain meaning and decline to add any judicial gloss on the statutory language.[8] MCI

---

6. CPLR § 6212(a) has four elements, but the "grounds" element has two parts, namely intent to engage in a prohibited act and the prohibited act itself.

7. The New York attachment statutes may also be used to establish a jurisdictional basis over the res attached. Weinstein, *supra,* at § 6201.01.

8. At oral argument, MCI repeatedly invited the Court to "do equity" and order the attachment. Considerations of "equity" are appropriate, however, only after a party seeking an attachment makes the necessary showing under CPLR § 6212(a), as a factor for the court to weigh in exercising its discretion over whether to issue the order. *See* CPLR § 6201 ("An order of attachment *may* be granted ...") (emphasis supplied); *Sartwell v. Field,*

has neither alleged nor proved that the Buy This defendants have "assigned" their right to this money to anyone or "encumbered" the funds in any way. *Id.* At present, the "basket of money" has not yet been transferred from Dollar Phone to Buy This. Thus, the location of these funds is not a "secret[ ]" because it is known to be in the possession of Dollar Phone. *Id.* Furthermore, this money obviously has not been "disposed of" by the Buy This defendants, as they have yet to collect it in the first place. *Id.* Finally, as the funds are in the possession of Dollar Phone, a New York corporation, MCI has failed to prove that the Buy This defendants have "removed [the funds at issue] from the state." *Id.* Moreover, MCI has also failed to prove that the Buy This defendants are "about to do any of these acts." *Id.* Perhaps recognizing that this case does not fit the statutory language, MCI offers three arguments based on case law. None are persuasive.

### 1. Bank Leumi

In support of its motion, MCI introduced evidence tending to show that the Buy This defendants have been less than vigilant in invoicing Dollar Phone and collecting the money they are owed.[9] MCI asserts that this activity (or lack thereof) provides "grounds for attachment" under CPLR 6201(3). MCI does not and can not, however, point to language in this statute that clearly encompasses this scenario. As we must strictly construe the statute against MCI, we decline to engage in an expansive reading of CPLR 6201(3) that would construe "assigned, disposed of, encumbered or secreted property, or removed it from the state" to cover the Buy This defendants' failure to invoice Dollar Phone more quickly.

Moreover, the single case cited by MCI, *Bank Leumi Trust Co. of N.Y. v. Istim Inc.,* is easily distinguishable from the case at bar. 892 F.Supp. 478 (S.D.N.Y.1995). MCI's Reply at 11. In *Bank Leumi,* a lender sued a borrower to enforce a loan agreement on which the borrower defaulted. 892 F.Supp. at 481. The lender sought to confirm an *ex parte* order of attachment of the borrower's "only substantial asset remaining in the United States" under CPLR §§ 6212(a) and 6201(3). *Id.* at 481, 483. The court found that plaintiff fulfilled its burden under that statute by making numerous allegations, including that the debtor had "removed all of its assets from the United States," "closed its New York office and removed all of its inventory and equipment," and "instructed its account debtors not to make payments to" the plaintiff creditor. *Id.* at 485. MCI's argument that their case fits within the holding of *Bank Leumi,* is not at all persuasive.

In the case at bar, MCI has not even alleged, much less proved, that the Buy This defendants have "instructed" Dollar Phone to transfer the funds at issue here to Buy This's creditors or to anyone else for that matter.[10] In *Bank Leumi,* the defendant debtor explicitly ordered its ac-

---

68 N.Y. 341, 341 (1877) (whether an attachment should be ordered rests within the discretion of the court hearing the motion).

**9.** Mr. Herzfeld was asked if he had "talked to [the President of Dollar Phone, Moses] Greenfield, about paying you the money Dollar Phone owed Buy This." Herzfeld Dep. at 209:12–13. He replied, "No." *Id.* at 209:14. He also stated that he had not yet invoiced Dollar Phone, but that he "hope[d] to get to it soon." *Id.* at 231:23–232:2.

**10.** To the contrary, during the deposition of Mr. Herzfeld, MCI asked him, "Did you tell [Mr. Greenfield] to hold onto that money while this application is pending?," and Mr. Herzfeld replied, "No." Herzfeld Dep. at 209:22–24.

count debtors not to pay so that her creditors would be unable to collect a judgment. Here, by contrast, the Buy This defendants have merely been slow to collect from their account debtor, Dollar Phone. Moreover, *Bank Leumi* explicitly rested its holding on the numerous allegations fraudulent intent, not the single allegation cited by MCI. *Id.* at 485 (noting that the allegations on which it relied "are not *alone* sufficient to prove an intent to defraud" under CPLR § 6201(3)) (emphasis in original). In short, *Bank Leumi* is readily distinguishable from the case at bar.

## 2. *Arzu*

MCI's second argument as to why this case falls within the ambit of CPLR § 6201(3) is that MCI "has an independent claim to the assets separate and apart from being an eventual judgment creditor." MCI's Reply at 11–12. Acceptance of this argument would prove too much, as it would snare too many ordinary contract disputes into the web of pre-judgment attachment. Moreover, the cases cited by MCI as support for this proposition, *Pando · v. Fernandez*, 124 A.D.2d 495, 508 N.Y.S.2d 8 (1st Dep't 1986) and *Arzu v. Arzu*, 190 A.D.2d 87, 597 N.Y.S.2d 322, 325 (1st Dep't 1993), are thoroughly distinguishable from the current circumstances. As *Pando* offers no discussion of CPLR § 6201(3), but rather focuses solely on the likelihood of plaintiff's ultimate success on the merits and the balance of equities, it is obviously inapplicable to the present discussion. 508 N.Y.S.2d at 8.

In *Arzu*, the plaintiff had previously settled a malpractice suit stemming from a botched operation that left him paralyzed as a child. 597 N.Y.S.2d at 323. The settlement funds were to be paid out in installments over many years and put in a special bank account controlled by his guardian. *Id.* When the plaintiff turned eighteen and gained legal control of the settlement funds, the plaintiff gave them to his father and stepmother, "on their representations that this amount and all future payments under the settlement would be deposited into an account for [the plaintiff's] sole use and benefit." *Id.* This account was held jointly by the plaintiff and his father. *Id.* Over the years, and unbeknownst to plaintiff, the father withdrew more than 90% of the approximately $620,000 deposited in the account from the settlement. *Id.* Plaintiff brought suit against his father and stepmother, and thereafter sought an order of attachment against their real and personal property. *Id.*

The *Arzu* court found that the plaintiff had made a sufficient showing under CPLR § 6201(3). *Id.* at 323–24. The fact that the father, who was "a fiduciary" to the plaintiff both as a parent and a co-signer of a joint bank account, never gave plaintiff any explanation for the withdrawals "entitles us to conclude that they acted with an intent to defraud plaintiff." *Id.* at 325. In the case at bar, however, there is no fiduciary relationship between MCI and the Buy This defendants. Moreover, the Buy This defendants have been entirely forthright with MCI as to the location of the money at issue here: Dollar Phone has it. In short, *Arzu* provides no support for MCI's position.

## 3. *Citisource*

MCI's third and final argument is based upon the fact that the Buy This defendants continued to sell MCI's minutes to Dollar Phone after MCI disputed that the Buy This defendants were permitted to resell under the service agreement. MCI's perspective was made clear to the Buy This defendants during an oral argument in state court on a temporary restraining or-

der requiring MCI to reinstate Buy This's telephone service after it had previously shut down the account. MCI cites *City of New York v. Citisource Inc.* to support its assertion that this conduct is "evidence of fraudulent intent and grounds for attachment." 679 F.Supp. 393 (S.D.N.Y.1988); *see* MCI's Reply at 12.

*Citisource*, however, like *Bank Leumi* and *Arzu*, is readily distinguishable. In that case, the defendants were convicted under the criminal RICO Act, and the district attorney's office had pursued a forfeiture action, but it was dismissed. *Citisource*, 679 F.Supp. at 394–95. The plaintiff then sued the defendants for treble damages under the civil RICO Act. *Id.* at 394. While the civil action was pending, and "[i]mmediately upon learning of the dismissal of the state forfeiture action," the defendants quickly attempted to transfer funds. *Id.* at 397. The court stated that, under such circumstances, "it seems that [defendants] intended to remove [their] funds from the reach of the Court." *Id.* In the present case, however, MCI has offered no evidence that Buy This defendants have attempted to remove any of their funds from the reach of this Court. The funds remain with Dollar Phone, and we have no reason to believe Dollar Phone will transfer the money to anyone other than to Buy This.

### III. CONCLUSION

For the reasons discussed above, we find that MCI has failed to prove that the Buy This defendants have "assigned, disposed of, encumbered or secreted [ ], or removed [ ] from the state" the proceeds from the sale of airtime minutes to Dollar Phone. CPLR § 6201(3). Nor has MCI proved that the Buy This defendants are "about to do any of these acts." *Id.* Because MCI was required to make at least one of these two showings to succeed on its motion for an order of attachment, we deny the motion.

As our disposition against MCI on this element resolves the present motion, we need not and do not pass on the other elements of 6212(a). Thus, we offer no opinion on whether MCI has a cause of action against the Buy This defendants, whether it is probable that MCI will succeed on the merits of such a cause of action, whether the amount demanded from the Buy This defendants exceeds all known claims by the Buy This defendants against MCI, or whether the Buy This defendants have ever had any intent to frustrate the enforcement of a judgment that might be rendered in MCI's favor.

**IT IS SO ORDERED.**