JSC FOREIGN ECONOMIC ASSO-
CIATION TECHNOSTROYEX-
PORT, Plaintiff,

v.

INTERNATIONAL DEVELOPMENT
AND TRADE SERVICES, INC.;
Edith Reich, Brigitte R. Jossem, also
Known as Brigitte Jossem–Kumpf; M
& B Oxford 41, Inc.; P & F Equities,
Inc.; and Atrium Square, Inc., Defen-
dants.

No. 03 Civ. 5562(JGK).

United States District Court,
S.D. New York.

March 4, 2004.

Ira M. Feinberg, Matthew A. Michaels, Tracey A. Tiska, Hogan & Hartson, L.L.P., New York City, for Plaintiff.

Barry A. Bohrer, Elizabeth Small, Morvillo, Abramowitz, Grand, Iason & Silberberg, P.C., James Wilson Perkins, Joel M. Cohen, Greenberg, Traurig, LLP, New York City, Ari S. Zymelman, Christopher N. Manning, Jonathan P. Graham, Williams & Connolly, L.L.P., Washington, DC, for Defendants.

## OPINION and ORDER

KOELTL, District Judge.

The plaintiff, JSC Foreign Economic Association Technostroyexport ("Techno"), applies pursuant to Federal Rule of Civil Procedure 64 and Article 62 of the New York Civil Practice Law and Rules ("C.P.L.R.") for an order of attachment against the assets of defendants Brigitte Jossem and Atrium Square, Inc. In September and October 2003, Jossem and Atrium Square sold real property worth approximately $1.3 million. None of the proceeds of these sales went to Jossem or Atrium Square, and at least $300,000 was transferred to an offshore company. The plaintiff contends that the circumstances of the transactions establish that Jossem and Atrium Square intend to frustrate the enforcement of any judgment against them, and that the plaintiff is therefore entitled to an attachment against the remainder of Jossem's and Atrium Square's assets.

New York law governs the availability of provisional remedies, including orders of attachment, in this Court. *See* Fed. R.Civ.P. 64. Pursuant to C.P.L.R. § 6201(3), an order of attachment may be granted where the plaintiff has demanded and would be entitled to a money judgment, and where:

> the defendant, with intent to ... frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts[.]

N.Y. C.P.L.R. § 6201(3). Section 6212 of the C.P.L.R. further provides that in order to obtain an order of attachment the mov-

ing party must show "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." N.Y.C.P.L.R. § 6212(a).

Under New York law, therefore, a party is entitled to an order of attachment pursuant to § 6201(3) upon demonstrating that: "(1) it has stated a claim for a money judgment; (2) it has a probability of success on the merits; (3) the defendant 'with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts;' and (4) the amount demanded from the defendant is greater than the amount of all counterclaims known to the party seeking attachment." *Bank Leumi Trust Co. v. Istim, Inc.*, 892 F.Supp. 478, 481 (S.D.N.Y. 1995). However, even if the plaintiff satisfies all of the statutory requirements for an order of attachment, the issuance of relief remains in the discretion of the Court, because attachment is recognized to be a harsh and extraordinary remedy. *See Bank of China v. NBM L.L.C.*, 192 F.Supp.2d 183, 186 (S.D.N.Y.2002); *Buy This, Inc. v. MCI Worldcom Communications, Inc.*, 178 F.Supp.2d 380, 383, 384 n. 8 (S.D.N.Y.2001).

The Court has previously concluded that the plaintiff has stated an alter ego claim against defendant Jossem and a reverse veil-piercing claim against defendant Atrium Square. *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F.Supp.2d 366, 378–79 (S.D.N.Y.2003). Both claims are part of the plaintiff's effort to enforce a prior judgment against defendant International Development and Trade Services, Inc.

("IDTS"), a judgment that now exceeds $200 million. *See id.* at 370. Because the defendants have not set forth any counterclaims in the papers before the Court, the amount demanded from the defendants exceeds the amount of all counterclaims known to the plaintiff. Therefore, the plaintiff has established the first and fourth requirements for an order of attachment.

In determining whether there is a likelihood of success on the merits, all legitimate inferences should be drawn in favor of the party seeking the attachment. *See Bank Leumi*, 892 F.Supp. at 482. In general, New York courts will pierce the corporate veil "whenever necessary to prevent fraud or achieve equity." *Walkovszky v. Carlton*, 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6, 7 (1966) (internal quotation marks and citation omitted). No definitive rule governs when courts will pierce the corporate veil, because the decision "in a given instance will necessarily depend on the attendant facts and equities." *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157, 1160 (1993). "Generally, however, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." *Id.*, 623 N.E.2d at 1160–61. The same elements must be established to succeed on a reverse veil-piercing claim. *See Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir.1997); *State v. Easton*, 169 Misc.2d 282, 647 N.Y.S.2d 904, 908–09 (Sup.Ct. 1995).

Courts will consider a lengthy list of factors when determining whether it is appropriate to pierce the corporate veil,

including: "(1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own." *William Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir.1991).

■ The plaintiff has submitted sufficient evidence, in connection with this motion and the prior motion for a preliminary injunction, to show that it is likely to succeed on the merits on its alter ego and reverse veil-piercing claims against Jossem and Atrium Square. The evidence submitted shows that Jossem was the sole shareholder, chairman, and director of IDTS. (IDTS's Response to Information Subpoena attached as Ex. 20 to Declaration of Ira M. Feinberg dated Sept. 5, 2003 ("Feinberg Decl."), at 1). The evidence shows that Jossem, along with her mother Edith Reich, the sole officer of IDTS, used IDTS's funds to pay numerous personal expenses. (*See* Exs. 28–29 to Feinberg Decl.) The evidence shows that IDTS operated out of Reich's and Jossem's home, and it did not adhere to customary corporate formalities. (Feinberg Decl. ¶ 29 and Exs. 34–36.) The evidence also shows that

Reich and Jossem diverted payments made to IDTS to Reich's personal bank account in Switzerland, and it shows that IDTS paid Jossem large "consulting fees." (*See* Decl. of Ernst Kohler dated Aug. 26, 2003 attached as Ex. 7 to Decl. of Tracey A. Tiska dated Feb. 5, 2004 ("Tiska Decl."), at ¶¶ 1–6; Ex. 8 to Tiska Decl.) Such conduct dissipated assets of IDTS that Techno could otherwise have used to satisfy its judgment against IDTS. *See Godwin Realty Assocs. v. CATV Enterp., Inc.*, 275 A.D.2d 269, 712 N.Y.S.2d 39, 41 (2000) ("The stripping of corporate assets by shareholders to render the corporation judgment proof constitutes a fraud or wrong justifying piercing the corporate veil.") IDTS was dissolved on September 24, 1997 for failure to pay taxes. (Feinberg Decl. ¶ 39.) The evidence submitted supports a finding that the plaintiff is likely to succeed on the merits of its alter ego claim against Jossem.

■ The evidence supports a similar conclusion with respect to the plaintiff's reverse veil-piercing claim against Atrium Square. Jossem is the sole officer of Atrium Square. (Feinberg Decl. Exs. 66–68, 70.) The very real estate transactions at issue on this motion suggest that Jossem did not distinguish between her assets and those of Atrium Square. The closing documents do not distinguish between money owed to, or paid on behalf of, either Atrium Square or Jossem. (*See* Decl. of Matthew A. Michaels dated Feb. 3, 2004 ("Michaels Decl."), Ex.5.) Moreover, a former director of Atrium Square, Dennis John Edwards, now has a position with Dothlyn Investments Limited ("Dothlyn"), the offshore entity that received $300,000 of the proceeds generated by the sale of the properties. (*Id.*) Atrium Square apparently no longer has any assets. (Transcript of Hearing dated Feb. 6, 2004 ("2/6/04 Tr."), at 18.) These facts together indicate that

the plaintiff is likely to succeed on its reverse veil-piercing claim against Atrium Square.

 To meet the third requirement for an attachment pursuant to C.P.L.R. § 6201(3), the plaintiff must establish: "(i) that the defendant either is about to or has assigned, disposed of, encumbered or secreted property, or removed it from the state, and (ii) that the defendant has acted or will act with the intent to defraud his or her creditors, or to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor." *Bank Leumi*, 892 F.Supp. at 482. It is undisputed that Jossem and Atrium Square have sold the three Red Dirt Road properties and have transferred a portion of the proceeds outside the state of New York. Indeed, it is also undisputed that Jossem and Atrium Square retained none of the proceeds of the sales of these properties. Atrium Square now holds no assets in the State of New York.

The plaintiff has also sufficiently established that Jossem and Atrium Square disposed of these properties with actual intent to frustrate the enforcement of a judgment that might be rendered in the plaintiff's favor. In the context of a motion for an attachment, fraud is not lightly inferred, and the moving party must establish fraudulent intent with evidentiary facts, not conclusory allegations. *Societe Generale Alsacienne De Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769, 500 N.Y.S.2d 278, 281 (1986). It is not sufficient to submit affidavits containing allegations that merely raise suspicions of fraudulent intent; rather, "[i]t must appear that such fraudulent intent really existed in the defendant's mind." *Id.*, 500 N.Y.S.2d at 281–82 (internal quotation marks omitted) (collecting cases). Because direct evidence of an intent to defraud or to frustrate the enforcement of a judgment is rare, the intent required under C.P.L.R. § 6201(3) is usually inferred from the circumstances. *See Arzu v. Arzu*, 190 A.D.2d 87, 597 N.Y.S.2d 322, 325 (1993).

The circumstances of the property transactions here, documented in the record before the Court, amply support a finding that Jossem and Atrium Square engaged in the transactions with actual intent to frustrate enforcement of a judgment against them. Jossem and Atrium Square together sold three separate properties for a total of $1.3 million. Jossem and Atrium Square entered sales contracts for two of the properties with the Town of Easthampton in June 2003, prior to the filing of the present action in July 2003, but the sales closed in September 2003, when the plaintiff's motion for a preliminary injunction was pending. The sale of the third property closed in October 2003, pursuant to a contract that Jossem entered sometime after this action had commenced in July. The closing documents for those sales indicate that neither Atrium Square nor Jossem received any part of the resulting proceeds. (*See* Exs. 5 & 8 to Michaels Decl.) The disbursement of the proceeds of the sales of all three properties is hazy at best, and counsel for Jossem and Atrium Square could not explain where all the proceeds went and why. Counsel explained that about $600,000 was paid to mortgage holders, Dothlyn and S.G. Assets LLC; however, Dothlyn is an offshore entity located in either the British Virgin Islands or the Isle of Man, and a former director of Atrium Square, Dennis John Edwards, was also a director of Dothlyn. (*See* Michaels Decl. Ex. 6; Tiska Decl. Ex. 6.) There were substantial closing costs, and $100,000 is listed as held in escrow, although the nature and beneficiary of the escrow is unexplained. The closing documents reflect over $400,000 paid to one Jerrold Morgulas, Esq., whom defense counsel did not identify and whose share of

the proceeds is left unexplained. (*See* Michaels Decl. Exs. 5, 8; 2/6/04 Tr. at 19.) These sales left Atrium Square without any assets, and neither Atrium Square nor Jossem allegedly received any money as a result of the sales. Under these circumstances, the plaintiff has presented more than sufficient evidence to support a finding of actual intent to frustrate the enforcement of a judgment. *See Fireman's Fund Ins. Co. v. Kapralos,* 942 F.Supp. 836, 841 (E.D.N.Y.1996) (granting attachment where money "found its way into a bank account located in Switzerland"); *Jannuzzo v. de Cuevas,* 216 A.D.2d 37, 627 N.Y.S.2d 919, 919 (1995) (finding attachment properly granted "based upon plaintiff's proof that defendant was attempting to frustrate the judgment by assigning art work that constituted the bulk of her assets in this state"); *Mishkin v. Kenney & Branisel, Inc.,* 609 F.Supp. 1254, 1256 (S.D.N.Y.1985) (Weinfeld, J.) ("The defendants' course of conduct, if not restrained, threatens to denude K & B of its rapidly diminishing assets."); *United Parcel Serv., Inc. v. Jay Norris Corp.,* 102 Misc.2d 231, 423 N.Y.S.2d 125, 127 (Sup.Ct.1979) (finding intent to frustrate enforcement of judgment where defendant had close relationship with transferee in conveyance, defendant failed to give notice of conveyance, defendant could not account for actual payment of consideration set out in sale agreement, and defendant was left as corporate shell following conveyance).

Because the Court finds that the plaintiff has satisfied all of the requirements for an order of attachment pursuant to C.P.L.R. § 6201(3), and because the Court concludes that an order of attachment is required in order to prevent defendants Jossem and Atrium Square from frustrating the enforcement of any judgment against them, the Court grants the plaintiff's motion for an attachment. The attachment will be conditioned on the plaintiff's posting a bond in the amount of

$250,000. *See* C.P.L.R. § 6212(b). The Court will consider any applications made by the defendants to modify the attachment order to permit reasonable payments of personal living expenses and legal fees, as well as to adjust the amount of the undertaking.

## CONCLUSION

The plaintiff's motion for an attachment is granted. The plaintiff shall submit a proposed order on two days' notice.

**SO ORDERED.**